<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                          :        Chapter 15
                                                :
SERGEY PETROVICH POYMANOV,         :        Case No. 17-10516 (MKV)
                                                :
Debtor in a Foreign Proceeding.         :
-----------------------------------------------------------x

**DECISION ON PPF MANAGEMENT LLC'S
MOTION TO UPDATE THE COURT AND TO REOPEN THE RECORD**

APPEARANCES:

WHITE & CASE LLP
*Counsel for Aleksey Vladimirovich Bazarnov, as Petitioner*
1221 Avenue of the Americas
New York, New York 10020
By:    Owen C. Pell, Esq.
       Laura J. Garr, Esq.
       Alice Tsier Esq.

-and-

Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, Florida 33131
By:    Richard S. Kebrdle, Esq.
       Jason Zakia, Esq.
       Matthew A. Goldberger, Esq.


GREENBERG TRAURIG, LLP
*Counsel for PPF Management LLC*
Met Life Building
200 Park Avenue
New York, New York 10166
By:    Alan J. Brody, Esq.
       Caroline J. Heller, Esq.
-and-

2101 L. Street, N.W.
Suite 1000
Washington, D.C. 20037
By:   Sanford M. Saunders Jr., Esq.
      Nicoleta Timofti, Esq.


**MARY KAY VYSKOCIL**
**UNITED STATES BANKRUPTCY JUDGE**

Aleksey Vladimirovich Bazarnov (the "Petitioner"), the financial administrator appointed by the Commercial (Arbitrazh) Court of the Moscow Region (the "Russian Court") in the insolvency proceeding of Sergey Petrovich Poymanov ("Poymanov") pending in Russia (the "Russian Insolvency Proceeding") pursuant to Russian Federal Law No. 127-FZ "On Insolvency (Bankruptcy)" (the "Russian Bankruptcy Law"), has moved for recognition of the Russian Insolvency Proceeding as a "foreign main proceeding" under Chapter 15 of the Bankruptcy Code and a finding, pursuant to section 1520 of the Bankruptcy Code, that an action commenced by PPF Management LLC ("PPF") against the Petitioner and various other defendants in the United States District Court for the Southern District of New York (the "SDNY Action") is subject to the automatic stay.  (Verified Petition for Recognition of Foreign Main Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 1515, 1517 and 1520 (the "Verified Petition" or "V. Pet.") [ECF No. 2])  PPF opposes both recognition of the Russian Insolvency Proceeding and the Petitioner's request for a finding that the SDNY Action is subject to the automatic stay.  (Objection of PPF Management LLC to Petition for Recognition of Foreign Main Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 1515, 1517 and 1520 (the "Obj.") [ECF No. 11])  The Court conducted a two-day evidentiary hearing (together, the "Evidentiary Hearing"), during which it heard testimony from the Petitioner and

- 2 -

two witnesses who provided testimony concerning Russian Bankruptcy Law. The Court also heard expert testimony concerning, as a general matter, a form of corporate raiding in Russia that is commonly referred to as "reiderstvo."

After the Evidentiary Hearing had concluded and the parties had submitted their proposed findings of fact and conclusions of law, but before final oral arguments on the Verified Petition, PPF filed the motion now before the Court, seeking to reopen the evidentiary record to introduce additional evidence it contends the Court should consider in connection with its ruling on the Verified Petition and PPF's objections thereto (the "Motion" or "Mtn."). [ECF No. 56] The Petitioner opposes the Motion (the "Petitioner's Opposition"). [ECF No. 59] The Court held a hearing on the Motion and has considered the arguments made at the hearing, as well as the Motion, the Petitioner's Opposition and PPF's reply to the Petitioner's Opposition. On July 19, 2017, the Court issued an Order Partially Granting PPF Management LLC's Motion to Update the Court and to Reopen the Record (the "Order"), pursuant to which the Court granted PPF's request to reopen the Record, granted PPF's request to admit the Assignment Related Evidence (defined below) and denied PPF's request to admit the Nogotkov Letter (defined below) and the Gureev Evidence (defined below). As provided in the Order, this Decision sets forth the rationale for the findings and conclusions contained in the Order.

## DISCUSSION

PPF's Motion is brought under Rule 59(a)(2) of the Federal Rules of Civil Procedure, titled *New Trial; Altering or Amending a Judgment,* which is applicable here pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure. Although FRCP 59 does not explicitly authorize a court to reopen the record prior to the issuance of a judgment, there is no doubt that the court has discretion to reopen the record to allow a party to submit additional evidence. *See*

*Hyperlaw, Inc. v. West Publishing Co. (In re Matthew Bender & Co., Inc.)*, 158 F.3d 674 (2d Cir. 1998), *Romeo v. Sherry*, 308 F. Supp. 2d 128, 138-39 (E.D.N.Y. 2004).  In deciding such a motion, courts consider the relevance and probative value of the additional evidence sought to be admitted, the reason for the moving party's failure to introduce the evidence earlier, whether the opposing party has had an opportunity for cross-examination, and the extent to which the opposing party may be prejudiced by admission of the proposed evidence.  *See In re Matthew Bender & Co., Inc.*, 158 F.3d at 679 (citing *Garcia v. Woman's Hosp.*, 97 F.3d 810, 814 (5th Cir. 1996)); *Romeo v. Sherry*, 308 F. Supp. 2d at 139.

**A.  The Untimeliness of the Request**

Relevant to the Court's decision regarding whether to reopen the Record is the degree to which the movant exercised diligence in discovering the new information or documents it seeks to introduce and acted promptly in seeking relief.  The Court finds that, with the exception of the Assignment Related Evidence (which relates to events that transpired after the Evidentiary Hearing), PPF failed to act in a timely manner and to exercise reasonable diligence to obtain the new evidence.

Approximately one month after the Petitioner served PPF with notice of the Verified Petition, and a mere three business days before the Evidentiary Hearing on the Verified Petition was scheduled to commence, PPF served a notice seeking to depose the Petitioner and the production of 23 categories of documents (together, the "Discovery Requests").  The Petitioner moved to quash the Discovery Requests (the "Motion to Quash") and PPF moved to compel compliance with the Discovery Requests (the "Motion to Compel").  PPF opposed the Motion to Quash and the Petitioner opposed the Motion to Compel (the Motion to Quash, the Motion to Compel and the oppositions thereto, collectively, the "Discovery Filings").  Given the lateness of

- 4 -

the Discovery Requests and the ensuing Discovery Filings, the competing Motion to Quash and Motion to Compel came on for hearing after the first day of the Evidentiary hearing (the "Discovery Hearing").  Having reviewed and considered the Discovery Requests, including each of the 23 requests for the production of documents (collectively, the "Document Requests") and the deposition notice, the Discovery Filings and the arguments of the parties at the Discovery Hearing, the Court issued its ruling from the bench at the Discovery Hearing.

The Court found that PPF failed to provide adequate notice in accordance with the Federal Rules, incorporated by the Bankruptcy Rules, of its intent to depose the Petitioner.  In addition, the Court noted that, at the first day of the Evidentiary Hearing, PPF had cross-examined the Petitioner for approximately three hours.  Before excusing the Petitioner from the witness stand, the Court asked PPF if it had any further questions for the Petitioner, and PPF's counsel replied that he did not.  Accordingly, the Court found that PPF had been afforded a full opportunity to examine the witness and granted the Motion to Quash with respect to the deposition of the Petitioner.  The Court also found that the majority of the Document Requests were overly broad, not tailored to lead to the production of documents relevant to the issues before the Court in connection with the Verified Petition, sought publicly available information, were not proportionate to the needs of this Chapter 15 case, and appeared to be calculated to gather information to support PPF's contentions solely in connection with the SDNY Action.  In addition, the Court agreed with the Petitioner's contention that, at the time PPF served its Discovery Requests, PPF had been on notice of the first Evidentiary Hearing date for approximately one month, and that PPF's attempt to seek discovery less than three business days before the first Evidentiary Hearing date would serve to delay a ruling on the Verified Petition, particularly when PPF could have sought discovery at an earlier point in the Chapter 15 case

(citing Bankruptcy Rule 1018).  The Court ruled that the Petitioner need only provide documents in response to two of the 23 document requests.

The Court now finds that PPF again has failed to act diligently in pursuing the new evidence, in waiting three weeks after the close of the evidentiary record in connection with the Verified Petition, and nearly fifty days after its opposition to the Verified Petition, to seek to put the new documents before the Court.

**B.  Evidentiary Issues**

The Court notes that, with the exception of the Assignment Related Evidence, there are several serious issues as to the admissibility of the new evidence PPF seeks, belatedly, to add to the Record.  Specifically, there are problems with respect to authentication of such new evidence and the documents are rank hearsay.  PPF has made no attempt to address these evidentiary issues, and opening the Record to allow PPF to bring in witnesses to address these evidentiary issues would add further delay to resolution of the Verified Petition.  Such additional delay would not only be prejudicial to the Petitioner, but also would be inconsistent with section 1517(c) of the Bankruptcy Code, which provides that "[a] petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time."  11 U.S.C. § 1517(c).

**C.  The New Evidence**

PPF moves to reopen the evidentiary record to introduce three categories of additional evidence:  (1) the Nogotkov Letter; (2) the Gureev Evidence and (3) the Assignment Related Evidence (each defined and analyzed below).

   *1.  The Nogotkov Letter*

PPF seeks to introduce a letter, dated April 4, 2017, from Kirill Nogotkov ("Nogotkov"),

the receiver of Pavlovskgranit-Invest, a company wholly-owned by Poymanov ("P-Invest"),[1] to Alexander Ivanovich Bastrykin ("Bastrykin"), the Head of the Investigative Committee of the Russian Federation, which PPF equates to the Russian version of the U.S. F.B.I. (the "Nogotkov Letter").[2]  In the letter, Nogotkov informs Bastrykin that:

(a) on March 21, 2017, Nogotkov submitted a statement to the Main Investigative Department for Moscow of Russia's Investigative Committee regarding unlawful actions that Poymanov undertook that inflicted approximately 1 billion rubles worth of damages upon P-Invest and its creditors;

(b) Poymanov has repeatedly relied on his corrupt connections and administrative resources to terminate investigation of criminal cases instituted concerning his criminal acts;

(c) in December 2013, an investigation of a criminal case concerning Poymanov's sale of certain property was discontinued, but on April 2, 2014, a Russian court invalidated the order to refuse to institute a criminal case against Poymanov with respect to such sale;

(d) as of the date of the Nogotkov Letter, Poymanov had been charged under the criminal code and the case had been turned over to a Russian court in the city of Voronezh; and

---

[1] Poymanov is a former majority shareholder of Open Joint Stock Company Pavlovskgranit ("P-Granit"), a Russian company engaged in, *inter alia*, the production of granite. (V. Pet. ¶ 4; Obj. ¶ 7)  On August 4, 2008, Poymanov caused his wholly-owned company, P-Invest, to enter into a credit agreement (the "P-Invest Credit Agreement"), as a borrower, with Sberbank of Russia ("Sberbank").  Under the P-Invest Credit Agreement, P-Invest was permitted to borrow up to approximately 5.1 billion rubles in order to finance Poymanov's acquisition of the remaining shares of P-Granit, with the exception of approximately one percent of the outstanding shares (the "Remaining P-Granit Shares"). (V. Pet. ¶ 5; Obj. ¶ 8)  Poymanov used the proceeds of funds advanced under the P-Invest Credit Agreement to acquire the Remaining P-Granit Shares, and thereafter, owned approximately ninety-nine percent of the shares of P-Granit. (V. Pet. ¶ 5)  P-Invest subsequently defaulted on its obligations under the P-Invest Credit Agreement (V. Pet. ¶ 8), and thereafter, an insolvency proceeding was commenced with respect to P-Invest (V. Pet. ¶ 8).  Nogotkov is the receiver appointed by the Russian court in P-Invest's insolvency proceeding. (Mtn. ¶ 10)

[2] A copy of the Nogotkov Letter, together with an English translation of the letter, is attached as Exhibit E to the Declaration of Kirill Zhukov, which is Exhibit A to the Motion (the "Zhukov Decl.").

>   (e) in November 2016, PPF commenced the SDNY Action against Sberbank, seeking over 40 billion rubles, and that PPF was registered just one day before the SDNY Action was commenced.

(Zhukov Decl. Exh. E)  In addition, in the Nogotkov Letter, Nogotkov asked Bastrykin to personally oversee an audit and examination of the circumstances and facts set forth in the complaint due to "well-grounded fears" that Poymanov "may use corrupt connections and administrative resources available to him in order to obstruct investigation of facts set forth in the statement submitted to the Main Investigative Department for Moscow of Russia's Investigative Committee . . . ." (Zhukov Decl. Exh. E)

PPF commenced the SDNY Action by a complaint, dated November 22, 2016 (the "Complaint").  The Complaint asserts claims that Poymanov and his former wife, Irina Podgornaya ("Podgornaya"), allegedly had assigned to PPF.  (Obj., Exh. C, Complaint ¶ 12)  For ease of discussion, the Court will refer to this purported assignment as the PPF Assignment.  The defendants in the SDNY Action include, *inter alia*, Sberbank, Nogotkov, and the Petitioner. (Complaint ¶¶ 14, 15, 25, 26, 30, 31)  The crux of the Complaint is, in short, that the defendants conspired to engage in a "reiderstvo" against Poymanov, Podgornaya and P-Granit, to strip Poymanov and Podgornaya of their interests in P-Granit for the ultimate purpose of eliminating P-Granit and seizing its assets.   (Complaint ¶¶ 1, 2, 7)

PPF argues that the Court should reopen the Record to permit PPF to introduce the Nogotkov Letter as relevant to PPF's argument that recognition of the Russian Insolvency Proceeding should be denied on public policy grounds.  Section 1506 of the Bankruptcy Code authorizes a court to refuse to take an action under Chapter 15 if such action would be "manifestly contrary to the public policy of the United States."  11 U.S.C. § 1506.  Specifically, PPF contends that the Nogotkov Letter, and its timing, constitute evidence that the Petitioner

commenced this Chapter 15 case in bad faith, in order to thwart the SDNY Action, to further the conspiracy to deprive Poymanov of his ownership interests in P-Granit and to retaliate against Poymanov by generating criminal charges.

The request to reopen the Record to allow the Nogotkov Letter to be introduced into evidence is denied. The letter is not relevant to the issues before the Court in connection with the Verified Petition. There is no allegation that Petitioner participated in drafting the Nogotkov Letter, the Petitioner is not copied on the letter, and he is not mentioned in the letter. There is no evidence in the Record that the Petitioner is conspiring, or has conspired, with Nogotkov, and even if the Petitioner were aware of the letter at the time it was sent, the letter does not prove that the Petitioner commenced this Chapter 15 case to facilitate a conspiracy against Poymanov. Accordingly, the Nogotkov Letter would have very low probative value, if any, in connection with the Court's decision on recognition of the Russian Insolvency Proceeding or PPF's opposition to recognition on the basis that such recognition would be manifestly contrary to the public policy of the United States. Nor is the Nogotkov Letter relevant to any other issues concerning the propriety of actions taken by the Petitioner in connection with the Russian Insolvency Proceeding or this Chapter 15 case.[3]

2. *The Gureev Evidence*

PPF also seeks to introduce information concerning the finances and employment of Petr Gureev ("Gureev")[4] in support of its argument that the Verified Petition should be denied.

---

[3] The definition of "foreign representative" in section 101(24) does not contain a disinterested requirement. However, in determining whether to grant the relief requested in the Verified Petition, the Court has not ignored PPF's allegations concerning the Petitioner's conduct. In any event, the Nogotkov Letter does not support a finding of impropriety on the part of the Petitioner.

[4] Gureev has also been referred to as Gureev Petr Andreevich.

Specifically, PPF contends that the foreign debtor – Poymanov – has failed to satisfy the eligibility requirements of section 109(a), which provides, in relevant part, that only a person that resides or has a domicile, a place of business, or property in the U.S. may be a debtor under the Bankruptcy Code.  11 U.S.C. § 109(a).  The Petitioner asserts that Poymanov has property in the U.S. in the form of a retainer, which was funded by payments to Poymanov that the Petitioner received, on Poymanov's behalf, from Gureev (collectively, the "Gureev Payments").  The Gureev Payments consist of two payments made by Gureev pursuant to two individual agreements providing for the partial repayment of a debt owed by P-Invest to Poymanov (collectively, the "Gureev Agreements").  PPF argues that the Gureev Payments and the underlying Gureev Agreements are subject to attack under Russian law because they constitute a "mock and sham" transaction.  More specifically, PPF argues that the Gureev Agreements and the Gureev Payments are transactions that are characterized as a third party debt repayment, but in actuality, were nothing more than a gift given with the intent to manufacture property in the U.S. for the purpose of satisfying the section 109(a) eligibility requirement.

The additional evidence that PPF wishes to introduce suggests that, as of 2015, Gureev earned only a meager salary from his employer, Invest-Sintez LLC ("Invest-Sintez") and that:

(a) Invest-Sintez's sole shareholder is Umanda Holdings Ltd., Cyprus ("Umanda");

(b) the director of Umanda is Dromaca Consultants Ltd. ("Dromaca");

(c) Evgeina Kyprianou ("Kyprianou") is a director of Dromaca;

(d)  Kyprianou is also the director of Atlas Alpha Services Limited ("Atlas Alpha"); and

(e) at some unspecified time, Atlas Alpha provided a service to Nisoram Holdings Limited ("Nisoram"), which is a company that is named as a defendant in the SDNY Action and is alleged by PPF to have participated in the corporate raiding of P-Granit.

PPF also wishes to introduce evidence showing that, the day after the Gureev Agreements were signed, Gureev was promoted to the role of a general director.

In support of its contention that the Retainer Account does not constitute Poymanov's property within the meaning of section 109(a), PPF seeks to challenge the source of the Gureev Payments and Gureev's motivation in making the Gureev Payments.  PPF argues that the Court should reopen the Record to allow submission of this additional evidence (collectively, the "Gureev Evidence") on the theory that

> [t]he Gureev Evidence is relevant to the issues of jurisdiction and qualification for recognition because it sheds light on whether Gureev had the financial ability to pay the 1.800.000 RUB debt from personal resources and the funds Bazarnov testified he transferred to the White & Case, LLP retainer account at Citibank constitute the proceeds of a "mock and sham transaction" which would nullify any possibility of the funds becoming property of the Debtor's estate under the Russian law.

(Mtn. ¶ 12(d))

PPF's request to reopen the Record to admit the Gureev Evidence is denied because the Gureev Evidence is not probative of whether the funds held in the retainer account constitute Poymanov's property and thereby satisfy the eligibility requirements of section 109(a).  The fact that PPF may have an argument that the Gureev Agreements and the payments made thereunder may be avoidable as a "mock and sham" transaction under Russian law because Gureev (a) lacked the financial capability to make the Gureev Payments from his own funds and/or (b) was incentivized to make the Gureev Payments (or, impliedly, even given the funds to make the Gureev Payments) by Invest-Sintez, Umanda, Dromaca, Kyprianou, Atlas Alpha or Nisoram does not render the Gureev Evidence relevant.  The sole issue arising under section 109(a) is whether the money held in the retainer account is property of the foreign debtor.  How that property was acquired or why a third party gave the property to the foreign debtor is legally

irrelevant for purposes of the section 109(a) issue before the Court.  *See, e.g., In re Octavier Admin. Pty Ltd.*, 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014) ("Section 109(a) says, simply, that the debtor must have property; it says nothing about the amount of such property, nor does it direct that there be any inquiry into the circumstances surrounding the debtor's acquisition of the property . . . .") (footnotes omitted).  In addition to the evidentiary infirmities with respect to the Gureev Evidence, PPF's new argument concerning the Gureev Evidence would require the Court to draw one of many speculative inferences and is too tenuous to have any probative value with respect to the Court's determination of the foreign debtor's property interests in the funds held in the retainer account.

PPF also argues that the Court should reopen the Record to admit the Gureev Evidence as probative with respect to PPF's argument that recognition of the Russian Insolvency Proceeding should be denied on public policy grounds.  PPF contends that recognition of the Russian Insolvency Proceeding would be manifestly contrary to the public policy of the United States because the Chapter 15 case is part of an illegal conspiracy against Poymanov to strip him of his interests in P-Granit, and ultimately, to eliminate P-Granit and seize its assets.  Thus, PPF contends that recognition of the Russian Insolvency Proceeding would be manifestly contrary to U.S. public policy because it would aid in an illegal conspiracy against Poymanov.  The Gureev Evidence, taken together with all of the other evidence that now constitutes the Record, does not even come close to supporting this argument.  The alleged nexus between Gureev and Nisoram, even assuming that Nisoram in fact conspired to deprive Poymanov and Podgornaya of their interests in P-Granit, is too speculative and remote to support a conclusion that the Gureev Payments and the commencement of this Chapter 15 case were part of any alleged conspiracy

against Poymanov, much less that recognition of the Russian Insolvency Proceeding would be manifestly contrary to the public policy of the United States.

3.  *The Assignment Related Evidence*

The final new evidence that PPF seeks to introduce relates to the Petitioner's motion in the Russian Insolvency Proceeding for a determination that the PPF Assignment is invalid as a matter of Russian Bankruptcy Law (the "Assignment Motion").   PPF seeks to update the Court as to actions taken by the Russian Court with respect to the Assignment Motion.  Specifically, PPF wishes to inform the Court that the Russian Court (a) found that the Petitioner failed to provide evidence as to the timing of Podgornaya's acquisition of shares in P-Granit, (b) declared a recess until May 16, 2017, and (c) on May 16, 2017, issued requests to the registrars of shares to produce information concerning Podgornaya's acquisition of shares in P-Granit by July 26, 2017, when the next hearing is scheduled to be held (collectively, the "Assignment Related Evidence").

The Court finds that the Assignment Motion is relevant to the Petitioner's request for an order determining that the SDNY Action is subject to the automatic stay because, if the PPF Assignment is valid, then the claims asserted in the SDNY Action would belong to PPF, not Poymanov, and therefore the SDNY Action would not be subject to the automatic stay.  If, on the other hand, the Russian Court were to determine that the PPF Assignment is not valid as a matter of Russian Bankruptcy Law and accordingly the PPF Assignment is void, then at least the portion of the claims asserted in the SDNY Action that belong to Poymanov, or otherwise should be administered as part of the Russian Insolvency Proceeding, would be subject to the automatic stay.  The Assignment Related Evidence is therefore highly relevant to the issues before the Court.  Moreover, the developments of which PPF seeks to update the Record occurred after the

conclusion of the Evidentiary Hearing, and thus could not have been introduced earlier.  Finally, since the Assignment Motion was filed on the Petitioner's behalf in the Russian Insolvency Proceeding, the Petitioner should be aware of the Assignment Related Evidence and is not prejudiced by the Court's taking these developments into consideration.   Accordingly, the Court has reopened the Record to allow consideration of the Assignment Related Evidence.

## CONCLUSION

For the reasons discussed herein, PPF's request to reopen the Record to admit the Nogotkov Letter and the Gureev Evidence is denied, and PPF's request to reopen the Record to introduce the developments concerning the Assignment Motion is granted.

Dated: New York, New York
     July 27, 2017                           *s/ Mary Kay Vyskocil*
                                         Honorable Mary Kay Vyskocil
                                         United States Bankruptcy Judge