**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| | : | |
| SERGEY PETROVICH POYMANOV, | : | Case No. 17-10516 (MKV) |
| | : | |
| Debtor in a Foreign Proceeding. | : | |

---------------------------------------------------------x

**DECISION AND ORDER PARTIALLY GRANTING PETITION FOR
RECOGNITION OF FOREIGN MAIN PROCEEDING**

APPEARANCES:

WHITE & CASE LLP
*Counsel for Aleksey Vladimirovich Bazarnov, as Petitioner*
1221 Avenue of the Americas
New York, New York 10020
By:     Owen C. Pell, Esq.
        Laura J. Garr, Esq.
        Alice Tsier Esq.

-and-

Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, Florida 33131
By:     Richard S. Kebrdle, Esq.
        Jason Zakia, Esq. (argued)
        Matthew A. Goldberger, Esq.

GREENBERG TRAURIG, LLP
*Counsel for PPF Management LLC*
Met Life Building
200 Park Avenue
New York, New York 10166
By:     Alan J. Brody, Esq.
        Caroline J. Heller, Esq.

-and-

2101 L. Street, N.W.
Suite 1000
Washington, D.C. 20037
By:    Sanford M. Saunders Jr., Esq. (argued)
       Nicoleta Timofti, Esq.


**MARY KAY VYSKOCIL**
**UNITED STATES BANKRUPTCY JUDGE**


Aleksey Vladimirovich Bazarnov (the "Petitioner"), the financial administrator appointed

by the Commercial (Arbitrazh) Court of the Moscow Region (the "Russian Court") in the

proceeding of Sergey Petrovich Poymanov ("Poymanov") pending in Russia (the "Russian

Insolvency Proceeding") pursuant to Russian Federal Law No. 127-FZ "On Insolvency

(Bankruptcy)" (the "Russian Bankruptcy Law"), seeks recognition of the Russian Insolvency

Proceeding as a foreign main proceeding pursuant to Chapter 15 of the Bankruptcy Code and a

declaration as to the application of the automatic stay upon recognition.  *See* Verified Petition for

Recognition of Foreign Main Proceeding and Motion for Order Granting Related Relief Pursuant

to 11 U.S.C. §§ 1515, 1517 and 1520 (the "Verified Petition" or "V. Pet.") [ECF No. 2].  PPF

Management LLC ("PPF") opposes the relief sought in the Verified Petition.  *See* Objection of

PPF Management LLC to Petition for Recognition of Foreign Main Proceeding and Motion for

Order Granting Related Relief Pursuant to 11 U.S.C. §§ 1515, 1517 and 1520 (the "Objection"

or the "Obj.") [ECF No. 11].[1]  The Court conducted a two-day evidentiary hearing, on April 12,

---

[1] In its Objection, PPF also suggests that the Court should appoint a trustee or examiner pursuant to sections
1521(a)(5), 1522(c) and 105(a) to investigate the claims PPF asserts in the SDNY Action (defined below).   (Obj. ¶¶
55, 56)  PPF has not moved for such relief in accordance with the Bankruptcy Code, the Federal Rules of
Bankruptcy Procedure or the Local Rules of the Bankruptcy Court and therefore this issue is not properly before the
Court.

2017 and May 1, 2017 (together, the "Evidentiary Hearing"),[2] during which it received

documentary evidence, including various exhibits and declarations referenced herein, and heard

live testimony of the Petitioner and two witnesses testifying regarding Russian Bankruptcy Law:

Pavel Boulatov ("Boulatov"), an attorney practicing in Moscow with a focus on international

arbitration, litigation and bankruptcy proceedings, testifying in support of the Petitioner; and

Kirill Zhukov ("Zhukov"), a barrister and partner in a Russian law firm, testifying in support of

PPF.  The Court also heard expert testimony from Louise I. Shelley ("Shelley") concerning

corporate raiding in Russia as a general matter, commonly referred to as "reiderstvo."  Pursuant

to an agreement between the Petitioner and PPF stated on the record at the Evidentiary Hearing

(May Tr. at 7:9-12:15), Shelley did not offer any opinion or otherwise provide testimony

concerning the Russian legal system as a whole, or testify as to any particular facts concerning

the Russian Insolvency Proceeding, Poymanov, the Petitioner or the Russian Court administering

the Russian Insolvency Proceeding.

Three weeks after the conclusion of the Evidentiary Hearing and ten days after the

submission of the parties' proposed findings of fact and conclusions of law, PPF filed a motion

to "update the Court and to reopen the record," requesting that the Court, in ruling on the

Verified Petition, consider additional evidence not presented prior to or at the Evidentiary

Hearing, (the "PPF Motion") [ECF No. 56].  The Petitioner opposed the PPF Motion. [ECF No.

59]  After conducting a hearing on the PPF Motion, the Court entered an order partially granting

the PPF Motion.  [ECF No. 67]  Thereafter, the Court issued a decision explaining the basis for

its ruling on the PPF Motion (the "Decision on PPF Motion") [ECF No. 68].

---

[2] References to the transcript of the Evidentiary Hearing on April 12, 2017 are cited as "Apr. Tr. at ——: ——" and references to the transcript of the Evidentiary Hearing on  May 1, 2017 are cited as "May Tr. at ——: ——."

On July 19, 2017, the Court heard final arguments on the Verified Petition and PPF's

opposition thereto.

***BACKGROUND***

**A.      The Credit Agreements**

Poymanov is an individual citizen and resident of the Russian Federation (V. Pet. ¶ 4;

PPF's Proposed Findings of Fact and Conclusions of Law (the "PPF Post Hr'g Br.") ¶ 8 [ECF

No. 53]) and a former majority shareholder of Open Joint Stock Company Pavlovskgranit ("P-

Granit"), a Russian company engaged in, *inter alia*, the production of granite.  (V. Pet. ¶ 4; Obj.

¶ 7)  On August 4, 2008, Poymanov caused his wholly-owned company, Pavlovskgranit-Invest

("P-Invest"), as borrower, to enter into a credit agreement (the "P-Invest Credit Agreement")

with Sberbank of Russia ("Sberbank"), pursuant to which P-Invest was permitted to borrow up to

RUB 5.1 billion.[3] (V. Pet. ¶ 5; Obj.  ¶ 8)  The chief purpose of the P-Invest Credit Agreement

was to finance Poymanov's acquisition of the remaining shares of P-Granit, with the exception

of approximately one percent of the outstanding shares (the "Remaining P-Granit Shares").  (V.

Pet. ¶ 5; Obj. ¶ 8)  Poymanov personally guaranteed P-Invest's obligations under the P-Invest

Credit Agreement (the "Poymanov Guarantee").  (Obj. ¶ 8)  Poymanov used the proceeds of the

funds advanced under the P-Invest Credit Agreement to acquire the Remaining P-Granit Shares,

and thereafter, owned approximately ninety-nine percent of the shares of P-Granit (the

"Poymanov P-Granit Shares"). (V. Pet. ¶ 5)

After his acquisition of the Remaining P-Granit Shares, Poymanov caused P-Granit to

borrow RUB 1.39 billion (which, at the time in 2009, equaled approximately U.S. $43.5 million)

---

[3] The parties have informed the Court that, at the time, RUB 5.1 billion equaled approximately between U.S. $215
million and U.S. $217 million. (V. Pet. ¶ 5; Obj. ¶ 8)

from Sberbank pursuant to three individual credit agreements (collectively, the "P-Granit Credit Agreements" and together with the P-Invest Credit Agreement, the "Credit Agreements").  (V. Pet. ¶ 6)  The obligations under the Credit Agreements were secured by, *inter alia*, the Poymanov P-Granit Shares and all of the shares of P-Invest.  (V. Pet. ¶ 6)

The Petitioner asserts, and PPF does not contest, that on February 24, 2010, P-Granit and P-Invest defaulted on their respective payment obligations under the Credit Agreements.  (V. Pet. ¶ 8)  The history of the proceedings that followed is uncontested.  On March 19, 2010, Sberbank accelerated the amount outstanding under the P-Invest Credit Agreement.  (V. Pet. ¶ 8) Sberbank subsequently assigned its rights under the Credit Agreements to Sberbank Capital LLC ("Sberbank Capital"), its wholly owned subsidiary that dealt with problem loans and loan workouts.  (V. Pet. ¶ 9; Obj. ¶ 20)  Thereafter, Sberbank Capital declared the full amounts outstanding under the P-Granit Credit Agreements immediately due and payable.  (V. Pet. ¶ 9) Sberbank Capital then commenced proceedings against Poymanov in the Odintsovsky City Court of the Moscow Region (the "Moscow Court") with respect to the P-Invest Credit Agreement and the Poymanov Guarantee.  (V. Pet. ¶ 10)  On January 18, 2011, the Moscow Court ruled that Poymanov was obligated to pay the full amount outstanding under the P-Invest Credit Agreement (the "Moscow Court Judgment"), and on April 14, 2011, the Moscow Court Judgment was upheld on appeal.  (V. Pet. ¶ 10)

On September 29, 2011, Sberbank Capital initiated a case in the Commercial (Arbitrazh) Court of the Voronezh Region to recognize P-Granit as insolvent.  That Court subsequently found P-Granit to be insolvent and an insolvency proceeding with respect to P-Granit (the "P-Granit Insolvency Proceeding") ensued.  (V. Pet. ¶ 10)  The following day, Sberbank Capital initiated a case in the Commercial (Arbitrazh) Court of the City of Moscow to recognize P-Invest

as insolvent.  That Court subsequently found P-Invest to be insolvent and an insolvency

proceeding with respect to P-Invest (the "P-Invest Insolvency Proceeding") ensued.  (V. Pet. ¶

10)

## B.     The Russian Insolvency Proceeding

On October 1, 2015, Suintex Limited ("Suintex"), a creditor of Poymanov,[4] filed an

application with the Russian Court to commence an involuntary proceeding to declare Poymanov

insolvent pursuant to Russian Bankruptcy Law.  (Petitioner's Memorandum of Law in Support of

Proposed Findings and Concl. of Law, (the "Pet'r Post Hr'g Br."), Exh. A, Petitioner's Proposed

Findings of Fact and Conclusions of Law ("Pet'r Prop. Finds. and Concls.") ¶ 11 [ECF No. 52];

PPF Post Hr'g Br. ¶¶ 6, 7)  On February 8, 2016, the Russian Court granted Suintex's application

and found that "[t]he debtor [Poymanov] meets the criteria for insolvency pursuant to the

statutory requirements of the Federal Law 'On Insolvency (Bankruptcy)'" and that "[i]n the

court's opinion, debt restructuring should be applied to the debtor."[5]  (Declaration of Pavel

Boulatov Pursuant to 28 U.S.C. § 1746 in Support of Petition for Recognition of the Russian

Insolvency Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§

1515, 1517 and 1520 (the "Boulatov Decl."), Exh. B, Ruling of the Commercial Court of the

Moscow Region on granting the applicant's claim and on introduction of individual's debt

restructuring, Case No. A41-78484/15, dated February 8, 2016 (the "Russian Court Ruling")

[ECF No. 3])  In the same ruling, the Russian Court appointed the Petitioner as the financial

administrator in the Russian Insolvency Proceeding and instructed him to, *inter alia*, analyze the

---

[4] Suintex is the legal successor to Sberbank Capital with respect to certain of its claims against Poymanov.  (V. Pet. ¶ 19)

[5] All citations to rulings and decisions of the Russian Court are citations to the English translations thereof, which have been provided to the Court by the parties.  Neither the Petitioner nor PPF have raised any objections concerning the accuracy of the translations.

financial condition of Poymanov and any evidence of intentional or fraudulent bankruptcy and to submit an individual's debt restructuring plan.  By decision dated July 21, 2016, the Russian Court ruled that, because no restructuring plan for Poymanov's debts was received by the Russian Court within the term established under Article 213.12(1) of the Russian Bankruptcy Law, "a bankruptcy procedure – the sale of the individual's assets – should be introduced."[6] (Boulatov Decl., Exh. C, Decision of the Commercial Court of the Moscow Region on declaring individual's bankruptcy and introduction of the sale of his assets, Case No. A41-78484/15, dated July 21, 2016 (the "Russian Court Decision"))

## C.      The SDNY Action

By complaint dated November 22, 2016 (the "Complaint"), PPF commenced an action in the United States District Court for the Southern District of New York, No. 16 CV 9139 (the "SDNY Action")[7] asserting claims against approximately twenty-two defendants (collectively, the "SDNY Claims").  In the Complaint, PPF asserts that Poymanov and his former wife, Irina Podgornaya ("Podgornaya")[8] had assigned the SDNY Claims to PPF.  (Obj., Exh. C, Complaint ¶ 12)   The defendants include, *inter alia*, Sberbank and its chief executive officer, Sberbank Capital, Suintex, the receiver appointed to oversee the estate of P-Invest, and the Petitioner. (Complaint ¶¶ 14, 15, 25, 26, 30, 31)  PPF asserts that the defendants conspired to engage in a reiderstvo against Poymanov, Podgornaya and P-Granit for the ultimate purpose of eliminating P-Granit and seizing its assets.  (Complaint ¶¶ 1, 2, 7)

---

[6] Pursuant to the Russian Court Decision, the procedure for the sale of Poymanov's assets was to be introduced for a six-month period (until January 21, 2017).  This period has subsequently been extended for an additional six-month period (until July 21, 2017).  (Boulatov Decl., Exh. D, Ruling of the Commercial Court of the Moscow Region on extending the term of sale of his assets, Case No. A41-78484/15, dated January 18, 2017)

[7] *See PPF Mgmt. LLC v. OJSC Sberbank of Russia*, Case No.16 CV 9139.

[8] Poymanov's former wife is referred to in the Complaint as Irina Porgornaya.  *See* Complaint, ¶1.

D.      **The Chapter 15 Case**

On March 3, 2017, the Petitioner commenced this Chapter 15 case and sought

recognition of the Russian Insolvency Proceeding as a foreign main proceeding and recognition

of the Petitioner as foreign representative.  (V. Pet. pp. 2, 16)  The Petitioner also seeks an order

determining that the SDNY Action is subject to the automatic stay on the grounds that the SDNY

Claims are property of Poymanov to be administered by the Petitioner.   (V. Pet., Exh. A,

Proposed Order; Petitioner's Reply to Obj. (the "Reply Brf.") [ECF No. 18] ¶¶ 16-21)

*DISCUSSION*

I.  **Recognition of the Russian Insolvency Proceeding**

A.  **The Section 109(a) Eligibility Requirements are Satisfied**

Under section 109(a), only a person who resides or has a domicile, a place of business, or

property in the United States, or a municipality, may be a debtor under the Bankruptcy Code.  11

U.S.C. § 109(a).  The eligibility requirements of section 109(a) apply in Chapter 15 cases.  *See*

*Drawbridge Special Opps. Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 247 (2d Cir. 2013).

Thus, since Poymanov is a Russian citizen residing in Russia, the Court may not grant the relief

requested in the Verified Petition unless Poymanov has a domicile, a place of business, or

property in the United States.  The Petitioner asserts that Poymanov has property in the United

States in the form of (a) funds that the Petitioner transferred to a client trust account in New York

that are held in trust as a retainer by the Petitioner's counsel (the "Retainer Account") (V. Pet. ¶

38) and (b) the SDNY Claims (V. Pet. ¶¶ 34, 38; Pet'r Post Hr'g Br. ¶¶ 15-18).  PPF argues that

the Petitioner has not provided evidence that the funds held in the Retainer Account are

Poymanov's property and that Poymanov and his wife assigned the SDNY Claims to PPF prior

to the commencement of this Chapter 15 case, and therefore, the SDNY Claims are not property

of the Debtor.

- 8 -

*1. The Retainer Account*

A debtor's funds held in a retainer account in the possession of counsel to a foreign

representative constitute property of the debtor in the United States and satisfy the eligibility

requirements of section 109(a).  *See In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R.

650, 654 (Bankr. S.D.N.Y. 2016); *In re Berau Capital Resources Pte Ltd.*, 540 B.R. 80, 82

(Bankr. S.D.N.Y. 2015); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372 (Bankr. S.D.N.Y.

2014).  The Petitioner testified that he funded the Retainer Account[9] with payments (the "Gureev

Payments") that he received from an individual named Gureev Petr Andreevich ("Gureev"),[10] on

Poymanov's behalf, in his capacity as the financial administrator in the Russian Insolvency

Proceeding.  (Apr. Tr. at 59:16-18, 63:3-11, 67:18-19)  The Gureev Payments include one RUB

1,200,000 payment made pursuant to the Agreement for Partial Repayment of Debt on Behalf of

Debtor, dated February 27, 2017 (the "First Gureev Agreement") and one RUB 600,000 payment

made pursuant to a separate Agreement for Partial Repayment of Debt on Behalf of Debtor,

dated February 27, 2017 (the "Second Gureev Agreement" and together with the First Gureev

Agreement, the "Gureev Agreements").  The Gureev Agreements were provided to PPF pursuant

to its discovery demands in this case and were admitted into evidence at the Evidentiary Hearing

as PPF Exhibits 3A and 3B.  (May Tr. at 43:11-23, 69:2-24)  Pursuant to the Gureev Agreements,

the Gureev Payments constitute partial payment of a debt owing by P-Invest to Poymanov (the

"P-Invest Debt").  (Apr. Tr. at 67:18-19)  The Petitioner testified that the Moscow Court

overseeing the P-Invest Insolvency Proceeding had issued a ruling, dated April 8, 2015 (the

---

[9] The Petitioner placed approximately $19,800 in the Retainer Account and those funds have not been withdrawn from the account.

[10] The parties have also referred to Gureev as Petr Gureev.

"Moscow Court Ruling"),[11] which confirmed that the P-Invest Debt was owing to Poymanov in

the amount of RUB 126,489,485.16.  (Apr. Tr. at 62:23–25, 63:1-2, 21-22, 65:6-10)  Each of the

Gureev Agreements provides that the Gureev Payments were made to Poymanov, and that the

Petitioner, as the financial administrator, confirms receipt of such payment "*on behalf of*

*Poymanov, whereupon it becomes part of Poymanov's bankruptcy estate*."  (PPF Trial Exhs. 3A,

3B)  (emphasis added)  Accordingly, the Court finds that the Petitioner has met his burden of

proving that the foreign debtor has property in the United States, consisting of the funds in the

Retainer Account.

PPF argues that the funds held in the Retainer Account are not Poymanov's property

because the Petitioner received the Gureev Payments and transferred them to the Retainer

Account in a way that does not comply with Russian Bankruptcy Law.  (Obj. ¶ 52; PPF Post

Hr'g Br. ¶¶ 88 – 90)  PPF does not argue that the funds belong to anyone other than Poymanov.

Rather, PPF relies on the testimony of its expert witness, Zhukov, that Russian Bankruptcy Law

requires that the Petitioner close all but one of Poymanov's bank accounts (the "Principal

Account"), transfer all cash balances to the Principal Account, and, without exception,

administer all of Poymanov's funds solely through the Principal Account.  (May Tr. 53:19-25,

58:17-59:2)  The Petitioner has not asserted that he placed the Gureev Payments into the

Principal Account before transferring the funds to the Retainer Account.  PPF contends that, as a

result, the mechanism by which the Petitioner transferred the funds to the Retainer Account is

improper under Russian Bankruptcy Law and, as such, the transfer of funds somehow rendered

the Gureev Payments as property that does not belong to Poymanov.  (PPF Post Hr'g Br. ¶¶ 87-

---

[11] The Moscow Court Ruling, which is attached as Exhibit A to each of the Gureev Agreements, was received into
evidence at the Evidentiary Hearing and marked as PPF Exhibit 4.

88)  PPF also argues that, based on the testimony of Zhukov, the Russian legal expert called by

PPF, the Petitioner's transfer of funds to the Retainer Account was improper because, pursuant to

Russian Bankruptcy Law, the Petitioner was required to obtain authorization from the Russian

Court before using the debtor's funds to retain the Petitioner's counsel.  (May Tr. at 61:1-62:18;

PPF Post Hr'g Br. ¶ 89)

       PPF has not presented any evidence to show that the funds transferred to the Retainer

Account were not Poymanov's property before they were transferred to the Retainer Account.

Nor has PPF proven that the funds are no longer Poymanov's property as a result of the

Petitioner's allegedly improper transfer of the funds to the Retainer Account.  Even assuming,

*arguendo*, that the mechanism for transferring the Gureev Payments to the Retainer Account was

not in accordance with Russian law, PPF has not demonstrated that, as a consequence of such

improper transfer, Poymanov would be stripped of his property interest in the funds.   At the

Recognition Hearing, PPF's expert, Zhukov, testified that Poymanov had filed a complaint dated

April 27, 2017 (the "<u>Poymanov Complaint</u>") with a Russian regulatory authority charged with

oversight of financial administrators and receivers, asserting that the Petitioner improperly

transferred the Gureev Payments by not transferring the funds from the Principal Account and

not obtaining prior authorization from the Russian Court.   (May Tr. at 73:12-20)  Although not

initially disclosed to this Court, Zhukov revealed for the first time, upon questioning by the

Court at the Evidentiary Hearing, that he is one of Poymanov's attorneys and that he was

involved in preparing the Poymanov Complaint.  (May Tr. at 73:7-9, 93:1-19)  The Court found

Zhukov's testimony to be, at times, evasive and calculated to advocate on behalf of his client,

Poymanov, and ultimately in support of the legal positions of PPF, which asserts claims in the

SDNY Action that Poymanov allegedly assigned to PPF.  *See, e.g.,* May Tr. at 76:3-17, 81:1-24,

84:24-86:12, 93:8-19.  Zhukov also testified that the Poymanov Complaint presupposes that the

Gureev Payments in fact are property belonging to Poymanov's estate. (May Tr. at 74:15-23)

Notably, however, PPF has not offered any evidence that, even if the transfer of the Gureev

Payments to the Retainer Account were to be held improper by the Russian Court for the reasons

alleged by PPF here and by Poymanov (with Zhukov's assistance) in the Poymanov Complaint,

such impropriety would, either in the future or retroactively, strip Poymanov of his property

interest in the Gureev Payments or the Retainer Account.

      PPF also argues that the Retainer Account is not property of the foreign debtor because,

according to Zhukov, the validity of the Gureev Agreements, which are governed by Russian

law, theoretically could be challenged as invalid on the basis that the agreements are actually

gifts to Poymanov by Gureev, rather than repayments of the P-Invest Debt, because there is little

likelihood that Gureev will recover from P-Invest on account of the P-Invest Debt.  Thus,

Zhukov testified that the Gureev Agreements could be viewed as a "mock and sham" transaction

under Russian law that could be voided by a Russian court.  (May Tr. at 44:22-49:2)  PPF has

not presented any evidence that the Gureev Agreements have actually been voided by a Russian

court, or that any proceeding has been initiated to void the agreements.  Nor has PPF presented

evidence to show that the Gureev Agreements are actually gifts and not agreements to pay a

third-party debt. [12]

      In sum, the Court finds that the Petitioner has provided sufficient evidence to demonstrate

that the Retainer Account is property in the United States belonging to Poymanov, and PPF has

---

[12] On cross-examination, Zhukov ultimately conceded that, if a receiver or financial administrator accepted a gift on
behalf of a debtor, such gift would constitute the debtor's property.  (May Tr. at 84:3-13)

not rebutted that evidence.  Accordingly, the Court concludes that the Petitioner has satisfied the eligibility requirements of section 109(a).

>   2.   *The SDNY Claims*

The Petitioner also asserts that the SDNY Claims constitute property of the debtor in the United States.  (Pet'r Post Hr'g Br. ¶¶ 15-18)  Because the Court finds that the Retainer Account satisfies the eligibility requirements of section 109(a), the Court need not consider whether the SDNY Claims are an additional basis for satisfying the section 109(a) eligibility requirements.  However, the Court will address the extent to which the SDNY Claims constitute property of the foreign debtor, below, in connection with the Petitioner's argument that the SDNY Action is subject to the automatic stay pursuant to section 1520 of the Bankruptcy Code.

## B.  The Russian Insolvency Proceeding is Entitled to Recognition Under Bankruptcy Code Section 1517

Section 1517(a) of the Bankruptcy Code provides that, subject to the public policy exception contained in section 1506, an order recognizing a foreign proceeding *shall* be entered if three conditions are met:  (a) the foreign proceeding for which recognition is sought is either a foreign main proceeding or a foreign nonmain proceeding within the meaning of section 1502; (b) the foreign representative applying for recognition is a person or body; and (c) the petition is accompanied by the documents enumerated in sections 1515(b) and 1515(c).  11 U.S.C. § 1517(a).

>   1.   *The Russian Insolvency Proceeding is a Foreign Main Proceeding*

Section 101(23) defines a "foreign proceeding" as

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).  The Petitioner has established, and PPF does not contest, that the Russian

Insolvency Proceeding is pending in a foreign country (Russia) under a law relating to

insolvency or adjustment of debt (the Russian Bankruptcy Law) in which the assets and affairs of

Poymanov are subject to control or supervision by the Russian Court for the purpose of

reorganization or liquidation.  *See, e.g.,* Russian Court Ruling, Boulatov Decl., Exh. B; Russian

Court Decision, Boulatov Decl., Exh. C.

PPF argues that the Russian Insolvency Proceeding does not qualify as a "foreign

proceeding" under section 101(23) because it is not a collective proceeding.  (Obj. ¶ 50)  A

proceeding is collective if it considers the rights and obligations of all of a debtor's creditors,

rather than a single creditor.  *See Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura

Minecham Ltd.)*, 480 B.R. 129, 140-41 (S.D.N.Y. 2012); *In re ABC Learning Centres Ltd.*, 445

B.R. 318, 328 (Bankr. D. Del. 2011); *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev.

2009).  Boulatov, the Petitioner's expert witness, testified at the Evidentiary Hearing that, under

Russian Bankruptcy Law, in proceedings such as the Russian Insolvency Proceeding, *all*

creditors submit their claims against the debtor, and the Russian court then must determine

whether to verify such claims.  (May. Tr. at 23:10-14)  Boulatov further testified that the

statutory obligation of a receiver is to locate and sell all of a debtor's assets in accordance with

Russian Bankruptcy Law, and then to distribute the proceeds from those sales "among all

creditors, according to the rankings and priorities provided by law.  So in this respect, it's a

collective proceeding because all the creditors and the debtor are involved."  (May. Tr. at 23:24-

25:5)  Similarly, the Petitioner testified at the Evidentiary Hearing that, in the Russian

Insolvency Proceeding, he is obligated to marshal the debtor's assets for the benefit of all of the

debtor's creditors whose claims have been verified by the Russian Court.  (Apr. Tr. at 26:6-20).

The Court found both Mr. Boulatov and the Petitioner to be credible witnesses.  Their testimony

that the Russian Insolvency Proceeding is collective is bolstered by the Russian Court Decision,

which refers to creditors' meetings that have been conducted in the Russian Insolvency

Proceeding.

PPF has not produced any evidence that contradicts the testimony of the Petitioner or

Boulatov on these points or suggested that any creditors, or groups of creditors, have been denied

an opportunity to participate in the Russian Insolvency Proceeding.  Nor has PPF provided any

evidence that the rights or obligations of all creditors are not considered in the Russian

Insolvency Proceeding.  Instead, PPF contends that the Russian Insolvency Proceeding is not

collective because it is "an involuntary action instituted by the [Petitioner's] co-defendants as a

tool in the Reiderstvo scheme to steel [sic] Poymanov's company, put co-conspirator Bazarnov

in control, and provide no benefit to the Debtor or his creditors."  (Obj. ¶ 50)   As discussed

below, PPF has not provided any evidence to support a finding that the Russian Insolvency

Proceeding was commenced for the purpose of stealing either P-Granit or P-Invest from

Poymanov, or that the Petitioner has participated in any conspiracy to gain control of

"Poymanov's company."  To the contrary, the Russian Court found that Suintex's application for

declaring Poymanov insolvent should be granted because, *inter alia*, Poymanov had monetary

obligations owing to Suintex that were overdue for more than three months, including the

Moscow Court Judgment in the amount of RUB 4,620,228,024.75 (which was upheld on appeal

and subsequently assigned to Suintex) and because Poymanov "meets the criteria for insolvency

pursuant to the statutory requirements  of the Federal Law "on Insolvency (Bankruptcy)."  *See*

Russian Court Ruling, Boulatov Decl., Exh. B.   Accordingly, the Court finds that the Russian

Insolvency Proceeding is a collective proceeding and qualifies as a "foreign proceeding" as

defined in section 101(23) of the Bankruptcy Code.

Section 1517(b) of the Bankruptcy Code provides that a foreign proceeding shall be

recognized as a foreign main proceeding if it is pending in the country where the debtor has the

"center of its main interests."  11 U.S.C. § 1517(b).  In the absence of evidence to the contrary,

an individual foreign debtor's habitual residence is presumed to be the center of the debtor's

main interests.  *See* 11 U.S.C. § 1516(c).  Poymanov is a Russian citizen and resides in Russia.

(V. Pet. ¶ 4; Obj. ¶ 7)  No evidence to the contrary has been provided by PPF.  Accordingly, the

Court finds and concludes that the Russian Insolvency Proceeding is a "foreign main

proceeding" under section 1517(b).

    2.   *The Petitioner Qualifies as a Foreign Representative*

Section 101(24) defines a "foreign representative" as

> a person or body, including a person or body appointed on an interim
> basis, authorized in a foreign proceeding to administer the
> reorganization or the liquidation of the debtor's assets or affairs or
> to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).  Section 1516 provides that "[i]f the decision or certificate referred to in

section 1515(b) indicates that . . . the person or body is a foreign representative, the court is

entitled to so presume."  11 U.S.C. § 1516(a).  It is uncontroverted that the Russian Court

appointed the Petitioner as the financial administrator in the Russian Insolvency Proceeding and

directed him to "analyze the financial condition of the debtor, evidence of intentional or

fraudulent bankruptcy [and] submit an individual's debt restructuring plan."  *See* Russian Court

Ruling, Boulatov Decl., Exh. B.   The Russian Court ruled subsequently that Poymanov was

insolvent, and appointed the Petitioner as the financial administrator charged with conducting a

sale of Poymanov's assets. *See* Russian Court Decision, Boulatov Decl., Exh. C.   Accordingly, the Petitioner qualifies as a foreign representative under section 101(24).

Notwithstanding that the Petitioner qualifies as a foreign representative as the term is defined in section 101(24) of the Code, PPF argues that the Petitioner's "actual conflict of interest and breach of fiduciary duty to Poymanov's creditors warrant denial of recognition of Bazarnov as a proposed foreign representative . . . ." (Obj. ¶ 54)  PPF further contends that the Petitioner does not qualify as a foreign representative because he commenced this Chapter 15 case only to further his own interests.  PPF asserts that the Petitioner commenced this Chapter 15 case to:

> further his personal pecuniary gains in direct conflict with the interests of creditors and U.S. public policy, inasmuch as the SDNY Claims, which he seeks to stop, are asserted against Bazarnov, in his individual capacity, as well as his collabertives [sic], alleging that they were part of the Reiderstvo scheme to defraud the Debtor and his former wife of their business and personal assets.

(Obj. ¶ 53)  PPF asserts that the Petitioner's conflict of interest is evidenced by the Petitioner's failure to:

(A) conduct "background due diligence" on Gureev, and explain Gureev's motivation for making the Gureev Payments before accepting the payments (PPF's Post Hr'g Br. ¶¶ 18, 53);

(B) deposit the Gureev Payments into the Principal Account and then transfer the funds to the Retainer Account from the Principal Account (PPF's Post Hr'g Br. ¶ 19);

(C) seek approval from the Russian Bankruptcy Court to retain the Petitioner's counsel in this Chapter 15 case and transfer the payment to the Retainer Account (PPF's Post Hr'g Br. ¶¶ 45-48); and

- 17 -

(D) pursue, upon Poymanov's request, and identify in his periodic report listing

Poymanov's assets, Poymanov's "claims regarding the illegal seizure of his interests

in P-Granit and P-Granit Invets [sic] as an asset in his bankruptcy" (PPF's Post Hr'g

Br. ¶¶ 26, 35).  Specifically, PPF contends that the "intentional undervaluation of

Poymanov's shares is a predicate act in furtherance of the conspiracy alleged bt [sic]

PPF Management in the case filed in the SDNY Litigation."  (PPF's Post Hr'g Br. ¶

29)

The definition of "foreign representative" in section 101(24) requires only that the person

or body seeking to be recognized as a foreign representative be appointed and authorized in a

foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or

affairs, or to act as a representative of such foreign proceeding.  There is no requirement that

such person or body satisfy a disinterested test.  The text of section 101(24) is not ambiguous on

this point, and it would be inappropriate for the Court to read into it any additional requirements.

"[W]hen [a] statute's language is plain, the sole function of the courts—at least where the

disposition required by the text is not absurd—is to enforce it according to its terms."  *Lamie v.*

*U.S. Trustee*, 540 U.S. 526, 534 (2004); *see also Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d

Cir.1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation, and that

judicial review must end at the statute's unambiguous terms.") (internal citation omitted).

Similarly, there is no requirement that a foreign representative be free of any conflict of interest,

however speculative or remote.  *See, e.g., In re OAS S.A.*, 533 B.R. 83, 98-101 (Bankr. S.D.N.Y.

2015).  In the *OAS* Chapter 15 case, holders of notes that were guaranteed by the foreign debtor

argued that the proposed foreign representative (Tavares) should not be recognized as such

because he could not meet neutrality requirements and held an inherent conflict of interest.  *See*

- 18 -

*In re OAS S.A.*, 533 B.R. at 98.  In concluding that Tavares was duly appointed and qualified to

act as the "foreign representative," the Court explained that whether Tavares performs his duties

is a question that is different from whether he is authorized to perform the duties set forth in

section 101(24).  *See id.* After concluding that Tavares was authorized to administer the foreign

debtors' reorganization, the court concluded that he therefore qualified as a foreign

representative.  *See id.*  The Court further held that there is no requirement under section 1505

that a foreign representative satisfy a neutrality test because section 1505 "does not modify or

otherwise impose unstated requirements on the definition of 'foreign representative' in

Bankruptcy Code § 101(24) . . . ." *Id.* at 99–100.

PPF has not in any way rebutted the undisputed fact that the Russian Court duly

appointed the Petitioner and authorized him to perform the duties set forth in section 101(24).

The Court agrees with the holding in *OAS* and finds that the mere allegation of a conflict of

interest with respect to the Petitioner does not undermine the conclusion that he qualifies as a

foreign representative.

Moreover, notwithstanding that there is no disinterestedness requirement in section

101(24), the Court finds and concludes that PPF has not provided any evidence to support its

contentions that the Petitioner has a conflict of interest or has taken actions that should disqualify

him from being recognized as a foreign representative.   At the outset, PPF cannot manufacture a

conflict of interest simply by asserting claims against the Petitioner in a complaint after he has

been appointed by the Russian Court.  Moreover, the Petitioner's failure to investigate the

employment history of Gureev before accepting the Gureev Payments, or Gureev's motive for

making the payments, does not evidence the Petitioner's bad faith, impropriety or involvement in

a scheme or conspiracy against Poymanov.  At the Evidentiary Hearing, the Petitioner testified

that the Gureev Payments were payments, by Gureev, of a debt owing to Poymanov by P-Invest, and that the debt had been confirmed by a ruling of a Russian Court in the P-Invest Insolvency Proceeding.  (Apr. Tr. at 63:18-23)  The Petitioner further explained that he is not obligated to investigate Gureev's personal motivation for making the Gureev Payment:  "I really cannot tell you what was the motivation of that person in paying this debt.  My task is to form, to aggregate the bankruptcy estate, and since that amount, that debt was confirmed by the ruling of a commercial court, my task was to accept the money and make it part of the bankruptcy estate." (Apr. Tr. at 63:3-11, 66:9-13)   PPF has not controverted this testimony by providing evidence that the Petitioner had any obligation under Russian law to investigate Gureev's motivation, or his financial wherewithal.  The testimony of Zhukov (PPF's expert on Russian Bankruptcy Law and Poymanov's personal counsel) that a party could, theoretically, seek to void the Gureev Payments by proving that Gureev acted in bad faith in making the payment does not evidence any bad faith or conflict of interest on the part of the Petitioner.    Moreover, how the Petitioner obtained the funds held in the Retainer Account and why Gureev made the Gureev Payments is legally irrelevant for purposes of the section 109(a) issue before the Court.  *See* Decision on PPF Motion, pp. 11, 12.

The Court further finds that neither (a) the Petitioner's failure to initially deposit the Gureev Payments into the Principal Account nor (b) the Petitioner's failure seek approval from the Russian Bankruptcy Court to retain the Petitioner's counsel prior to transferring the Gureev Payments evidences a conflict of interest or bad faith of the Petitioner.  The wire transfer documents, which were offered by PPF and received into evidence, contain the following remittance information:  "DEPOSIT ON ACCOUNT OF CONTEMPLATED COSTS OF

LITIGATION BY A.V. BAZARNOV, FINANCIAL ADMINISTRATOR, *FROM THE*

*BANKRUPTCY ESTATE OF S.P. POYMANOV*."   (PPF Hrg. Exh. 5) (emphasis added)

Similarly, the Petitioner's failure to list in his periodic report (which identifies

Poymanov's assets) Poymanov's "claims regarding the illegal seizure of his interests in P-Granit

and P-Granit Invets [sic] as an asset in his bankruptcy" (PPF's Post Hr'g Br. ¶¶ 26, 35), and

failure to pursue such claim, does not evidence a conflict of interest or any impropriety.  PPF

argues that the valuation of Poymanov's shares in P-Granit and P-Invest was improper, as such

shares were undervalued, and the Petitioner should have included Poymanov's claims with

respect to this undervaluation as an asset of Poymanov and pursued the claims on Poymanov's

behalf.  (PPF's Post Hr'g Br. ¶¶ 22-35)  Thus, PPF argues, the Petitioner's failure to include

these claims in his report as an asset of the debtor, and to pursue these claims, constitutes a

conflict of interest that precludes the Petitioner's recognition as foreign representative.  The

Court finds that PPF has not demonstrated that the Petitioner's refusal to identify in his periodic

report, and pursue claims based on an undervaluation of Poymanov's shares (and related claims

regarding the illegal disposition of his shares) evidences bad faith on the part of the Petitioner or

a conflict of interest.  The Petitioner explained that he did not include these claims as an asset in

his report, and declined to pursue these claims on behalf of Poymanov and his creditors, because

he believes that the claims lack merit and he has not been provided with any evidence that would

support the claims.  At the Evidentiary Hearing, the Petitioner testified as follows:

> Russian courts have given their opinion on whether the valuation
> was correct or incorrect, and this was done on several occasions.
> The sale of the shares took place in strict accordance with the current
> Russian Federation regulation.  The sale of the shares was confirmed
> by a number of court determinations, court rulings.  Mr. Poymanov
> tried to contest the valuation and the procedure for selling those
> shares in courts throughout the Russian Federation on various
> instances.  His complaints were rejected at every level.  I also have

> to add that according to the Russian Legislation, there is a statute of limitation in cases of this sort, and that statute of limitation is three years.  As you see from the letter, those transactions took place in, on, or around 2011, so the statute of limitation has expired.  So, this request for further information - - and I emphasize that this was a request on my part to Mr. Poymanov to submit additional documentation to really convince me why I should go out and seek reevaluation of those shares.  So this was a request for additional documentation.  So, instead of satisfying my request, Mr. Poymanov chose to contest my inaction in a Russian court.  The courts ruled that I had not acted in conflict, so to speak, that my actions had no conflict with my job description.  It was also stated in the court ruling that they had requested the same documentation that I requested in my letter.  However, no documentation had been submitted, to the extent that the court and myself had requested of Mr. Poymanov.  No documents had been produced.

(Apr. Tr. at 90:14-91:19)  Moreover, the Petitioner asserts, and PPF has not denied, that the "issues concerning the valuation of the auctioned shares were fully and extensively litigated on several occasions" and that pursuant to a decision of Krasnogorsky City Court of the Moscow Region, dated November 7, 2011, in Case No. 2-4672/11, that court rejected the valuation introduced by Poymanov because the proposed valuation "contains contradictory information, the source data used in the calculations is not supported by reliable sources, calculations and reasons are not presented in full."  (V. Pet. ¶ 21)  The Court further notes that the Russian Court dismissed Poymanov's application to force the Petitioner to assess the value of Poymanov's shares.  *See* Russian Court Decision, Boulatov Decl., Exh. C.  Accordingly, the Court finds that, even if such issues were relevant to whether the Petitioner qualifies as a foreign representative, PPF has not demonstrated that the Petitioner, in fact, has acted in bad faith or has any conflict of interest.

3.   *The Verified Petition Meets the Requirements of Bankruptcy Code Section 1515*

To establish a basis for recognition under Chapter 15, the petition must be supported by

documentation on which this Court may ground recognition.  *See* 11 U.S.C. §§ 1515(b), (c).  The

Russian Court Ruling and the Russian Court Decision, attached to the Boulatov Declaration as

Exhibits B and C, satisfy the requirements of section 1515(b).  In addition, section 1515(c)

provides that a "petition for recognition shall also be accompanied by a statement identifying all

foreign proceedings with respect to the debtor that are known to the foreign representative."  11

U.S.C. § 1515(c).  The Court finds that the Petitioner has complied with this requirement.  *See* V.

Pet. ¶ 58.

**C.  Recognition of the Russian Insolvency Proceeding is Not
       Manifestly Contrary to the Public Policy of United States**

Recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is

expressly made subject to Bankruptcy Code section 1506, which sets forth a public policy

exception under Chapter 15.  Section 1506 of the Bankruptcy Code authorizes courts to refuse to

take actions governed by Chapter 15 of the Code if such actions would be "manifestly contrary

to the public policy of the United States."  11 U.S.C. § 1506.

PPF argues that the Court should exercise its discretion and refuse to recognize the

Russian Insolvency Proceeding as a foreign main proceeding because recognition would be

contrary to public policy for the following reasons:

- the Petitioner concealed the Gureev Agreements, which are subject to attack

  under Russian law, and the Petitioner failed to conduct due diligence on the

  source of the Gureev Payments, which failure could "constitute knowing

  participation in money laundering" (PPF's Post Hr'g Br. ¶¶ 109, 110, 112);

- the Petitioner's wire transfer of the Gureev Payments to the Retainer Account "can constitute circumstantial evidence of suspicious or illegal activity" (PPF's Post Hr'g Br. ¶ 109);

- the Petitioner's conflicts of interest (as discussed above) (PPF's Post Hr'g Br. ¶ 114); and

- "the significant risk that the Poymanov bankruptcy is part of a Russian corporate raiding scheme, the pervasive problem of Reiderstvo . . . ." (PPF's Post Hr'g Br. ¶ 114).

Courts may only refuse to take actions under section 1506 if granting the relief at issue would be "*manifestly*" contrary to U.S. public policy.   The public policy exception set forth in section 1506 is narrowly construed and invoked only under exceptional circumstances that concern matters of fundamental importance to the United States.  *See, e.g.*, *Morning Mist Hldgs. Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 139 (2d Cir. 2013) (citing GUIDE TO ENACTMENT OF THE UNCITRAL MODEL LAW ON CROSS–BORDER INSOLVENCY, promulgated by the United Nations Commission on International Trade Law UNCITRAL, H.R.REP. NO. 109–31(I), at 109 (2005)); *In re Rede Energia S.A.*, 515 B.R. 69, 92 (Bankr. S.D.N.Y. 2014) ("the few reported cases that have analyzed [section] 1506 at length recognize that it is to be applied sparingly") (quoting *In re Toft*, 453 B.R. 186, 193 (Bankr. S.D.N.Y. 2011)).  The party invoking the public policy exception bears the burden of proof.  *See In re Ashapura Minechem Ltd.*, No. 11–14668, 2011 WL 5855475, at *4 (Bankr. S.D.N.Y. Nov. 22, 2011).

PPF has made no showing that granting recognition to the Russian Insolvency Proceeding would in any way be manifestly contrary to the public policy of the United States or repugnant to

any matter of fundamental importance to the United States.  As discussed above, the Court finds

that PPF has not presented any evidence of impropriety with respect to the Petitioner's entry into

the Gureev Agreements, as PPF has not demonstrated that the Petitioner had any duty to

investigate Gureev's motive for paying the P-Invest Debt.  Nor is there any public policy of the

United States that would be offended by granting recognition to a foreign proceeding involving

the sale of distressed debt at issue here.  Similarly, the fact that the Petitioner transferred the

Gureev Payments to the Retainer Account from an account other than the Principal Account or

that the Petitioner may have not obtained requisite approval from the Russian Court before

retaining Petitioner's U.S. counsel and transferring the funds to the Retainer Account does not

implicate or offend any matters of U.S. public policy.  Nothing about the transfer of funds to the

Retainer Account violates U.S. law or public policy.[13]  Moreover, for the reasons discussed

above, PPF has not presented any evidence on which to base a finding that the Petitioner has a

conflict of interest or that he has engaged in any activity that would render recognition of the

Russian Insolvency Proceeding manifestly contrary to the public policy of the United States.

The Court further finds that PPF has failed to present any evidence that the Russian

Insolvency Proceeding is part of a corporate raiding scheme against Poymanov.  Shelley, PPF's

expert witness, provided general testimony as to the occurrence of reiderstvo in Russia.

However, PPF has not demonstrated that the Petitioner has engaged in any bad faith dealing or

criminal activity in connection with the Russian Insolvency Proceeding (or otherwise).  Nor has

PPF demonstrated that there has been any impropriety or corruption attributable to the Russian

Court in connection with the Russian Insolvency Proceeding.  There is simply no evidence that

---

[13] PPF's challenges concerning the Petitioner's transfer of the funds to the Retainer Account do not relate not to U.S. law or policy.  Rather, these challenges are based on requirements under Russian law, and Poymanov has recourse to Russian courts to address them.  In fact, Poymanov has raised these issues in the Poymanov Complaint, discussed above.

the Russian Insolvency Proceeding is the result of anything other than the undisputed defaults

under the Credit Agreements, the foreign debtor's failure to make the payments under the

Poymanov Guarantee, and the Moscow Judgment that was upheld on appeal.

## II.  Application of Bankruptcy Code Section 1520 to the SDNY Claims

The Petitioner seeks an order declaring that the SDNY Action is subject to the automatic

stay.  Section 1520 provides that, upon recognition of a foreign proceeding as a foreign main

proceeding, the automatic stay set forth in section 362 of the Bankruptcy Code applies with

respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the

United States.  11 U.S.C. § 1520(a)(1).  Because the Russian Insolvency Proceeding qualifies as

a foreign main proceeding and the Court hereby grants such recognition, any act to exercise

control over Poymanov's property within the territorial jurisdiction of the United States is

subject to the automatic stay in accordance with section 362 of the Bankruptcy Code.  Thus, the

SDNY Action is subject to the automatic stay to the extent that the SDNY Claims constitute

property of Poymanov to be administered in the Russian Insolvency Proceeding.

A determination of whether any portion of the SDNY Claims constitute property of

Poymanov necessarily must turn on a threshold determination as to whether the purported

transfer or assignment of the SDNY Claims by Poymanov and Podgornaya (the "PPF

Assignment") to PPF, which was formed the day before the SDNY Action was commenced, is

void *ab initio* as a matter of Russian Bankruptcy Law and, in fact, whether any such assignment

actually occurred.[14]  These issues are currently before the Russian Court.[15]

---

[14] Neither PPF nor Poymanov have provided a copy of the agreement governing the PPF Assignment to the
Petitioner or this Court. (Apr. Tr. at 44:16-19)

[15] The Court has reopened the Record to receive further evidence regarding the status of this matter in the Russian
Court.  *See* Decision on PPF Motion [ECF No. 68].  As discussed in the Decision on PPF Motion, according to the

The Petitioner contends that, but for challenged the PPF Assignment, a portion of the SDNY Claims would be property of Poymanov which, under Russian Bankruptcy Law, only the Petitioner is authorized to pursue.  Specifically, the Petitioner asserts that, pursuant to Article 213.24 of the Russian Bankruptcy Law, once a debtor is declared bankrupt, only the financial administrator, not the debtor, is authorized to exercise rights with respect to the debtor's property and to collect and dispose of such property for the benefit of the debtor's creditors. (Boulatov Decl. ¶ 18)  Such property would include, subject to limitations that are inapplicable here, causes of action belonging to the debtor.  (Boulatov Decl. ¶ 19)  Such property may also include a portion of the SDNY Claims that Podgornaya allegedly assigned to PPF.  Boulatov testified that, to the extent that Podgornaya acquired her shares after her marriage to Poymanov, a portion of her claims may constitute marital property to be administered by the Petitioner in the Russian Insolvency Proceeding for the benefit of Poymanov's creditors.  (May Tr. at 24:6-25:37)  The Petitioner further asserts that, pursuant to Article 213.25(5) of the Russian Bankruptcy Law, all transactions made by a debtor who has been declared bankrupt (as opposed to such transactions made by the financial administrator acting on his/her behalf) with respect to the debtor's assets, subject to exceptions that are inapplicable here, are deemed void *ab initio*.  (Boulatov Decl. ¶ 20)

Although Poymanov has not complied with the Petitioner's request to provide him with a copy of the PPF Assignment (Apr. Tr. at 44:16-19), and therefore the Petitioner has no way of verifying the date on which the PPF Assignment occurred (V. Pet. ¶ 35 ), the Petitioner contends that the PPF Assignment could not have taken place before the date on which Poymanov was declared insolvent in the Russian Insolvency Proceeding (July 21, 2016) because Delaware state

---

most current information, the Petitioner's request for a determination as to the validity of the PPF Assignment remains pending in the Russian Court.

records show that PPF was formed by PPF's counsel on November 21, 2016, the day before PPF

commenced the SDNY Action.  (V. Pet. ¶¶ 32-34, n.18)  Thus, the Petitioner contends that,

because the PPF Assignment occurred while the Russian Insolvency Proceeding was pending, as

a matter of Russian Insolvency Law, the assignment is void *ab initio*.  (Pet'r Post Hr'g Br. ¶¶ 15-

18)  PPF maintains that the SDNY Claims belong to PPF.  (Obj. ¶¶ 37-41) PPF has not taken a

position as to the date of the PPF Assignment or disputed that the purported assignment occurred

after Poymanov was declared a bankrupt.  With respect to a purported assignment of claims by

Podgornaya to PPF, Zhukov, PPF's expert witness and Poymanov's counsel, testified that, to the

extent that Podgornaya acquired her shares in P-Granit prior to her marriage to Poymanov, her

claims "do not form part of anything which is under the jurisdiction and in the scope of the

bankruptcy proceedings of Mr. Poymanov in Russia."  (May Tr. at 40:17-23)

        The Petitioner has filed two applications with the Russian Court seeking a ruling that the

PPF Assignment is void as a matter of Russian Bankruptcy Law (together, the "Assignment

Applications").  (Apr. Tr. 44:1-19, 46:14-23; May Tr. at 95:4-7)  Pursuant to the Assignment

Applications, the Petitioner seeks a determination by the Russian Court that the assignment of

claims by Poymanov and Podgornaya to PPF are invalid.[16]  (May Tr. at 95:4-7)  On May 16,

2017, the Russian Court issued requests to the registrars of shares and the Voronezh oblast

archive in Russia to produce, by July 26, 2017, the date on which the next hearing on the

Assignment Applications was scheduled to take place before the Russian Court - information

regarding when Podgornaya acquired her P-Granit shares.  (PPF Mtn. ¶ 9)  Thus, this issue is

currently pending before the Russian Court administering the Russian Insolvency Proceeding

---

[16] One of the Assignment Applications seeks a determination that the purported assignment by Poymanov is invalid, and the other application seeks a determination that the purported assignment by Podgornaya is invalid.

and, (to the Court's knowledge) as of the date of this Decision and Order, the Russian Court has

not issued a ruling on the Assignment Applications.  (May Tr. at 95:11-21)  Once the Russian

Court rules on the validity of the alleged PPF Assignment, several rounds of appeal of that ruling

may be available to the parties.  (May Tr. at 95:11-21)

Because this Court is granting recognition to the Russian Insolvency Proceeding as a

foreign main proceeding, there is no question that the stay set forth in section 362 automatically

applies to property of Poymanov that is within the United States.  *See* 11 U.S.C. § 1520(a)(1).

The extent to which the SDNY Claims constitute property of Poymanov (or property of PPF)

requires a determination of Russian Bankruptcy Law.  This matter is currently pending before

the Russian Court in connection with the Assignment Applications and it would not be

appropriate for this Court, under the circumstances of this ancillary case, to issue a ruling

construing Russian Bankruptcy Law in advance of the Russian Court's ruling on the same issue.

This is particularly the case here, not only because the issue turns on the application of Russian

Bankruptcy Law, but also because certain factual information necessary to make such a

determination (*e.g.* the date on which Podgornaya acquired her shares in P-Granit, the existence

of an assignment agreement, the documentation of the agreement, and the date of the

assignment) is outstanding, and the Russian Court has issued a request to the appropriate Russian

institutions for the production of certain of this information.  Thus, not only does the Court lack

the information necessary to make a determination as to the validity of the PPF Assignment, any

attempt to do so would undermine the Russian Court's ability to administer the foreign main

proceeding.  Such a result would be at odds with one of the fundamental purposes of Chapter 15,

which is to provide an efficient mechanism for cooperation between U.S. courts and the courts of

foreign countries involved in cross-border insolvency cases.  11 U.S.C. § 1501(a)(1)

Accordingly, the Court concludes that the automatic stay applies with respect to property of Poymanov within the territorial jurisdiction of the United States.  The Court finds that the extent to which the SDNY Claims are property of Poymanov to be administered in the Russian Insolvency Proceeding, and, as such, subject to the automatic stay, is subject to a non-frivolous suit that is pending before the Russian Court.  If the Russian Court issues an order in favor of the Petitioner on the Assignment Applications, the Petitioner may then seek to enforce the automatic stay in this Court with respect to the SDNY Action.  In the event that PPF proceeds with the SDNY Action while the Assignment Applications are pending in Russia, it does so at its peril, and the Petitioner has recourse under section 362(k) for any damages he may sustain in the event it is proven that PPF willfully violated the automatic stay.

### *CONCLUSION*

For the reasons set forth above, the Court hereby finds and concludes that:

(1) this case was properly commenced in compliance with and pursuant to Bankruptcy Code sections 1504 and 1515;

(2) the Verified Petition satisfies the requirements of Bankruptcy Code section 1515;

(3) the Petitioner qualifies as a foreign representative within the meaning of Bankruptcy Code section 101(24);

(4) the Russian Insolvency Proceeding is a foreign proceeding within the meaning of Bankruptcy Code section 101(23);

(5) Russia is the center of Poymanov's main interests;

(6) the Russian Insolvency Proceeding is entitled to recognition as a foreign main proceeding pursuant to Bankruptcy Code sections 1502(4) and 1517(b)(1);

(7) recognition of the Russian Insolvency Proceeding as a foreign main proceeding is not contrary, much less *manifestly* contrary, to the public policy of the United States; and

(8) pursuant to Bankruptcy Code section 1520, sections 361 and 362 of the Bankruptcy Code apply with respect to Poymanov and the property of Poymanov that is within the territorial jurisdiction of the United States.

**It is so ordered.**

Dated: New York, New York
       July 31, 2017                              _s/ Mary Kay Vyskocil_
                                                  HONORABLE MAY KAY VYSKOCIL
                                                  UNITED STATES BANKRUPTCY JUDGE