UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
In re:                                          :    Chapter 15
                                                :
SERGEY PETROVICH POYMANOV,                      :    Case No. 17-10516 (MKV)
                                                :
Debtor in a Foreign Proceeding.                 :
---------------------------------------------------------x

DECISION AND ORDER PARTIALLY GRANTING
MOTION FOR ENTRY OF AN ORDER RECOGNIZING
THE RUSSIAN ORDER AND ENFORCING THE AUTOMATIC STAY

APPEARANCES:

BLANK ROME LLP
*Counsel for Aleksey Vladimirovich Bazarnov, as Foreign Representative*

The Chrysler Building
401 Lexington Avenue
New York, New York 10174
By:    Rick Antonoff, Esq.
       Evan J. Zucker, Esq.


GREENBERG TRAURIG, LLP
*Counsel for PPF Management LLC*

Met Life Building
200 Park Avenue
New York, New York 10166
By:    Alan J. Brody, Esq.
       Caroline J. Heller, Esq.

-and-

2101 L. Street, N.W.
Suite 1000
Washington, D.C. 20037
By:    Sanford M. Saunders Jr., Esq.
       Nicoleta Timofti, Esq.

1

**MARY KAY VYSKOCIL**
**UNITED STATES BANKRUPTCY JUDGE**

  This Chapter 15 case was commenced by the Verified Petition for Recognition of Foreign Main Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 1515, 1517 and 1520 (the "Verified Petition") [ECF No. 2].  By decision and order dated July 31, 2017, this Court found, over the objection of PPF Management LLC ("PPF"),[1] that (a) the insolvency proceeding of Sergey Petrovich Poymanov ("Poymanov") pending in Russia (the "Russian Insolvency Proceeding") pursuant to Russian Federal Law No. 127-FZ "On Insolvency (Bankruptcy)" ("Russian Bankruptcy Law") qualifies as a "foreign main proceeding" under Bankruptcy Code section 1517(b) and (b) that Aleksey Vladimirovich Bazarnov (the "Foreign Representative"), the financial administrator appointed by the Commercial (Arbitrazh) Court of the Moscow Region (the "Russian Court"), qualifies as a foreign representative, as the term is defined in section 101(24) of the Code.  (Decision and Order Partially Granting Petition for Recognition of Foreign Main Proceeding (the "Recognition Order")).[2] [ECF No. 70]   At that time, the Court declined to rule that the automatic stay set forth in section 362 of the Bankruptcy Code and applicable upon recognition of a foreign main proceeding pursuant to Bankruptcy Code section 1520, was applicable to a civil action pending in the District Court of the Southern District of New York brought by PPF against the Foreign Representative and other defendants.  (Recognition Order, pp. 26-29)

---

[1] *See* Objection of PPF Management LLC to Petition for Recognition of Foreign Main Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 1515, 1517 and 1520 (the "Objection" or the "Obj."). [ECF No. 11].

[2] On August 14, 2017, PPF filed a notice of appeal of the Recognition Order.  [ECF No. 72]   The appeal is currently pending.

More specifically, PPF is the plaintiff in an action pending in the District Court, 16 CV 9139 (the "SDNY Action") in which it asserts claims against approximately twenty-two defendants, including the Foreign Representative (collectively, the "SDNY Claims"). PPF asserts in that action that Poymanov and his former wife, Irina Podgornaya ("Podgornaya") had assigned the SDNY Claims to PPF (Obj., Exh. C, Complaint ¶ 12) and alleges that the defendants conspired to unlawfully divest Poymanov of his shares in Pavlovskgranit-Invest ("P-Invest") and Open Joint Stock Company Pavlovskgranit ("P-Granit"), a Russian company engaged in, *inter alia*, the production of granite (collectively, the "Poymanov Shares").[3] The SDNY Claims also include similar allegations with respect to the foreclosure on shares in P-Granit owned by Podgornaya.

In the Verified Petition, the Foreign Representative sought a finding that the SDNY Claims were subject to the automatic stay pursuant to Bankruptcy Code section 1520, which provides that "[u]pon recognition of a foreign proceeding that is a foreign main proceeding . . . sections 361 and 362 [the automatic stay] apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a)(1). However, in the Recognition Order, the Court denied the Foreign Representative's request for a determination that the SDNY Action is subject to the automatic stay because the Foreign Representative had challenged in the Russian Insolvency Proceeding the purported assignment of the SDNY Claims to PPF. As such, threshold issues impacting the extent to which the SDNY Claims constitute property of Poymanov's estate were pending, at that time, before the Russian

---

[3] Poymanov had pledged the Poymanov Shares as security under the P-Invest Credit Agreement and the P-Granit Credit Agreements (together, the "Credit Agreements"). A discussion of the Credit Agreements is set forth in the Recognition Order, familiarity with which is assumed for purposes of this Decision and Order. After the borrowers defaulted on their respective payment obligations under the Credit Agreements, the lender's assignees foreclosed on the Poymanov Shares, which ultimately lead to the Russian Insolvency Proceeding against Poymanov.

Court. As a result, in recognizing the Russian Insolvency Proceeding, this Court declined to determine the reach of the automatic stay with respect to the purportedly assigned claims:

> A determination of whether any portion of the SDNY Claims constitute property of Poymanov necessarily must turn on a threshold determination as to whether the purported transfer or assignment of the SDNY Claims by Poymanov and Podgornaya (the "PPF Assignment") to PPF, which was formed the day before the SDNY Action was commenced, is void *ab initio* as a matter of Russian Bankruptcy Law and, in fact, whether any such assignment actually occurred. These issues are currently before the Russian Court.

(Recognition Order, p. 26)[4]

Unbeknownst to the Court and apparently to the parties, the Russian Court issued its ruling concerning the validity of the PPF Assignment (the "Russian Court Assignment Ruling") on the same day that the Recognition Order was entered in this case.[5] Poymanov appealed the Russian Court Assignment Ruling in Russia.

Now pending before the Court is the motion by the Foreign Representative for an order recognizing and giving effect in the U.S. to the Russian Court Assignment Ruling. (Motion of the Foreign Representative for Entry of an Order Recognizing the Russian Order and Enforcing the Automatic Stay, (the "Stay Motion")). [ECF No. 76] Specifically, the Foreign Representative seeks an order providing, *inter alia*, that:

- "the assignment of the SDNY Claims by Poymanov to PPF is invalid;"
- "the claims assigned by Poymanov to PPF, to the extent such claims exist, are property of Poymanov's estate;" and

---

[4] *See also* (Recognition Order, p. 29) ("The extent to which the SDNY Claims constitute property of Poymanov (or property of PPF) requires a determination of Russian Bankruptcy Law. This matter is currently pending before the Russian Court in connection with the Assignment Applications and it would not be appropriate for this Court, under the circumstances of this ancillary case, to issue a ruling construing Russian Bankruptcy Law in advance of the Russian Court's ruling on the same issue.")

[5] All references herein to the Russian Court Assignment Ruling shall be references to the certified translation thereof. [ECF 78]

- "the continuation of the SDNY Action is subject to the automatic stay imposed by section 362 of the Bankruptcy Code."

(Stay Motion, Exh. A, Proposed Order)  The Foreign Representative bases his requests for relief on Bankruptcy Code sections 1520(a)(1), 362(a)(1) and (a)(3), 1521(a)(1) and (c), and 1507.  In his reply brief in connection with the Stay Motion [ECF No. 87], the Foreign Representative informed the Court that, on October 11, 2017, the Tenth Commercial (Arbitrazh) Appellate Court (the "Russian Appellate Court") had affirmed the Russian Court Assignment Ruling.  (Declaration of Declaration of Sergey S. Sokolov (the "Sokolov Decl.") ¶ 18).[6]  [ECF No. 88]

PPF objects to the Stay Motion and argues that the Russian Court, in its ruling, denied the Foreign Representative's requests for a determination that the SDNY Claims constitute property of Poymanov's estate and imposed costs on the Foreign Representative as a result of the adverse ruling.  (PPF Management LLC's Opposition to Motion of the Foreign Representative Seeking to Enforce the Automatic Stay (the "Opposition" or "Opp."))[7]  [ECF No. 83]  PPF also points out that the Russian Court denied the Foreign Representative's request for a determination that Podgornaya's assignment of claims to PPF be invalidated.  (Opp. pp. 5, 6)

On October 18, 2017, the Court held a hearing on the Stay Motion.  At the hearing, counsel to the Foreign Representative informed the Court that on the previous day, October 17, 2017, the Russian Appellate Court had issued a written decision setting forth the basis for its ruling denying Poymanov's request for reversal of the Russian Court Assignment Ruling (the "Appellate Court Assignment Decision").  With the agreement of the parties, the Court adjourned the hearing to afford the Foreign Representative time to file a certified translation of

---

[6] Sergey S. Sokolov is the managing partner of the Moscow office of Marks & Sokolov law firm and a qualified jurist permitted to practice law in Russia. (Sokolov Decl. ¶ 1)

[7] In support of its Opposition, PPF filed the Declaration of Kirill Zhukov, a Russian citizen and an attorney licensed to practice law in the Russian Federation (the "Kirill Decl.") ¶ 1. [ECF No. 84]

the Appellate Court Assignment Decision and directed the parties to file a statement (a "<u>Position Statement</u>") with the Court setting forth the extent, if any, to which the Appellate Court Assignment Decision altered the parties' respective arguments with respect to the Stay Motion. On October 23, 2017, the Foreign Representative filed a certified translation of the Appellate Court Assignment Decision. [ECF No. 91] Thereafter, the Foreign Representative [ECF No. 98] and PPF [ECF No. 97] each filed a Position Statement.

On November 8, 2017, the Court conducted the adjourned hearing on the Stay Motion. For the reasons set forth below, the Court finds that (1) the portion of the SDNY Action that is based on a purported transfer of claims from Poymanov to PPF is subject to the automatic stay pursuant to Bankruptcy Code sections 362(a)(3) and 1520, and (2) the Foreign Representative has failed to demonstrate that the claims purportedly assigned to PPF by Podgornaya are subject to the automatic stay.

## *DISCUSSION*

The Court's decision in the Recognition Order, acting as an ancillary court in the context of this Chapter 15 case, to defer construing the extent to which the SDNY Claims constitute property of Poymanov's estate (an issue that turns on application of Russian Law) until after the Russian Court administering the foreign main proceeding ruled on the issue (as the issue was pending before the Russian Court at the time the Recognition Order was entered) is supported by Bankruptcy Code section 1525(a), which mandates that this "court shall cooperate to the maximum extent possible with a foreign court or a foreign representative." 11 U.S.C. § 1525(a). In addition, awaiting a ruling from the Russian Court in this regard is consistent with one of the chief purposes underlying Chapter 15, which is "to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of . . . cooperation between . . . courts of the United States . . . and . . . the courts and other competent authorities of foreign countries

6

involved in cross-border insolvency cases." 11 U.S.C. § 1501(a)(1).  Accordingly, the extent to which the SDNY Action is stayed by operation of section 1520 turns on both the Russian Court Assignment Ruling, as affirmed by the Appellate Court Assignment Decision, and Bankruptcy Code section 362.

### A. The Russian Court Assignment Ruling and the Appellate Court Assignment Decision

Each party construes the Russian Court Assignment Ruling differently and, not surprisingly, in a way that comports with the party's position on the Stay Motion.  The Court's analysis begins with a review of the Russian Court Assignment Ruling and the Appellate Court Assignment Decision.

The Russian Court Appellate Ruling was issued in response to two applications by the Foreign Representative, which the Russian Court consolidated for joint consideration.  (Russian Court Assignment Ruling, p. 2)  In the consolidated applications, the Foreign Representative sought the invalidation of the purported assignments[8] by Poymanov and Podgornaya[9] to PPF of the rights to claim pecuniary damages and moral harm inflicted on Poymanov and Podgornaya as a result of the seizure of P-Granit (through the foreclosure of shares held by Poymanov and Podgornaya) and, in the case of Poymanov, the foreclosure of his shares in P-Invest.  (Russian Court Assignment Ruling, pp. 1-2)  The Foreign Representative also sought an "application of the consequences of the invalidity" of such assignment by way of reversion of such claims into

---

[8] Because no evidence has been presented to either this Court or the Russian Court that the PPF Assignment actually took place, the PPF Assignment is referred to as a purported assignment.  In this regard, the Russian Court noted that it considered Poymanov's "refusal to provide documents and other information regarding the assignments of rights to claim pecuniary damages and moral harm to PPF Management as the Debtor's actions in bad faith because the Debtor concealed the documents and information that should be at his disposal from the Commercial (Arbitrazh) court in order to hinder challenging the Debtor's transaction."  (Russian Court Assignment Ruling, p. 11)

[9] The Foreign Representative contended that claims assigned by Podgornaya were property jointly acquired with Poymanov during their marriage and therefore constitute property of Poymanov's bankruptcy estate.  (Russian Court Assignment Ruling p. 4)

the ownership of Poymanov in the Russian Insolvency Proceeding.  *See* Russian Court Assignment Ruling, pp. 1-2.  Poymanov objected to granting the application concerning Poymanov's alleged assignment of claims to PPF, contending - - contrary to PPF's claims in the SDNY Action - - that the assignment agreement had not been concluded.  *See id.* pp. 2, 3, 12.

In its ruling, the Russian Court referred to the SDNY Action and PPF's contention in the Complaint that the claims asserted therein were transferred to PPF by Poymanov and Podgornaya.  *See id.* p. 4.  Thus, it is clear that, in the Russian Court Assignment Ruling, the Russian Court was referring to the PPF Assignment and the SDNY Claims.  The parties do not contest this point.

At the outset, I note that the Russian Court found that the Foreign Representative failed to prove that Podgornaya acquired her shares in P-Granit during her marriage to Poymanov (as Podgornaya asserted that she acquired her shares prior to the marriage).  *See id.* pp. 3, 12.  Thus, the Russian Court denied the Foreign Representative's request to invalidate that portion of the PPF Assignment concerning Podgornaya's assignment of claims to PPF.  Accordingly, there is no basis for this Court to find that the portion of the SDNY Action that is based on claims owned by Podgornaya and purportedly assigned to PPF is subject to the automatic stay.

The remaining issue, therefore, is whether, in light of the Russian Court Assignment Ruling, the remaining portion of the SDNY Claims (*i.e.* claims purportedly assigned by Poymanov) are considered to be property of Poymanov's estate under Russian Insolvency Law, as determined by the Russian Court and set forth in the Russian Court Assignment Ruling, and as such, subject to the automatic stay.  At the outset of its decision, the Russian Court concluded that "the assigned rights have never existed as legally recognized items."  *See id.* p. 4.  In reaching this conclusion, the Russian Court examined at least 4 instances of foreclosures on the

8

Poymanov Shares, and cited at least 20 decisions of Russian courts regarding the lawfulness of such foreclosures both in the first instance and on appeal. *See id.* pp. 6 – 8. In each case, the Russian Court concluded that the Russian appellate courts confirmed the lawfulness of each of the foreclosures and that those decisions were not subject to further appeal. *See id.* pp. 6 – 8. Accordingly, the Russian Court concluded that the foreclosures on the Poymanov Shares cannot be considered as inflicting damage on the rights and interests of Poymanov or be treated as grounds for any right by Poymanov to claim pecuniary damages or moral harm. *See id.* pp. 6 – 8. As such, the Russian Court determined that "the circumstances which, according to PPF Management's position stated in the civil complaint filed with the Southern District Court of the United States for the Southern District Of New York, could give rise to . . . Poymanov's . . . rights to claim pecuniary damages and moral harm, did not occur and, therefore the rights or claim in question have never existed and could not have been transferred either to PPF Management or to any third parties." *See id.* p. 9.

Turning to the Foreign Representative's request for a determination that the PPF Assignment is invalid, the Russian Court noted that, under Article 61.2(2) of the Russian Bankruptcy Law, a transaction made by a debtor for the purpose of inflicting damage on the property rights of creditors may be declared invalid by a court if such transaction was made after the acceptance of an application for declaring a debtor bankrupt, and, as a result of such transaction, the property rights of creditors were violated. *See id.* p. 11. The Russian Court ruled that, because the claims purportedly assigned to PPF were nonexistent, there was no actual damage to creditors' property rights, and therefore, there was no basis for declaring the PPF Assignment invalid under Article 61.2 of the Russian Bankruptcy Law. The Russian Court nevertheless went on to rule that since any purported assignment was done after Poymanov was

9

declared insolvent and without the consent of the Foreign Representative, the assignment transaction is therefore void:

> At the same time, the Arbitration court concludes that the transaction for the disposal of the rights to claim pecuniary damages and moral harm was made by S. P. Poymanov after July 21, 2016, i.e. after the date of declaring him insolvent (bankrupt) by the Arbitration court and the introduction of the sale of assets procedure, as well as without the financial manager's consent to the transaction, which is a violation of the procedure for entering into transactions by the debtor established by the Federal law and which ***shows that it [the transaction for the disposal of the rights] is void***.

*Id.* p. 10 (emphasis added).

In addition to concluding that Poymanov's assignment of claims to PPF is void, the Russian Court held as follows:

> Since in accordance with the effective civil legislation rules, not only transaction[s] [sic] for transfer of assets to third parties, but also actions aimed at actual performance of civil obligations arising from a transaction, may be qualified as invalid, ***in this case the court concludes that the transaction for the actual assignment (transfer) of the rights to claim pecuniary damages and moral harm made by S. P. Poymanov to PPF Management,*** regardless of whether this transaction was made in the form of a direct agreement between the said persons or by several transactions, ***is invalid***.

*Id.* p. 11 (emphasis added). In this regard, the Russian Court further stated in its decision that "[t]he legal consequences arising out of entering into transaction [sic] for the transfer of the rights of claim to PPF Management and relating to the necessity to declare it void shall be applied from the moment of transfer of the rights of claim to PPF Management. *Id.* p. 11. Accordingly, the Russian Court ruled as follows:

> Taking into account the above, the court declares the transaction or several related transactions for the transfer of the rights to claim pecuniary damages and moral harm made by S. P. Poymanov as a single transaction for transfer of the said property by the Debtor in favor of PPF Management made without the financial manager's consent, ***void on the basis of Article 213.25 (5) of the Bankruptcy Law***.

10

*Id.* pp. 11, 12 (emphasis added).

PPF is correct that the Russian Court went on to hold that because the assigned claims do not exist, "there are no grounds to apply the consequences of invalidity of the void transaction in the form of bilateral restitution in accordance with Article 167 of the Civil Code of the Russian Federation." *Id.* p. 12. However, the Russian Court ultimately ruled: (a) "to grant [the Foreign Representative's] application to invalidate the transaction . . . for the transfer of the property claim rights" from Poymanov to PPF; (b) "[t]o dismiss [the Foreign Representative's] claim for application of the consequences of the invalidity of void transaction in the form of a reversion of the respective rights of claim to the bankruptcy estate;" (c) "[t]o discontinue the proceedings on [the Foreign Representative's] application for invalidation of the transaction for assignment of the rights to claim pecuniary damages and moral harm inflicted on . . . Podgornaya . . ." and (d) as a result of the rulings adverse to the Foreign Representative on his applications, "[t]o collect the state duty in the amount of RUB 12,000 . . . from [the Foreign Representative] . . ."[10] *Id.* pp. 12, 13.

Based upon the foregoing, this Court finds that the Russian Court ruled that the Foreign Representative failed to prove that the claims held by Podgornaya, based on her ownership of P-Granit shares, constitute marital property, and therefore, there was no basis for invalidating any such purported transfer of such claims by Podgornaya. Consequently, there is no basis for a determination that such claims are subject to the automatic stay pursuant to sections 362 and 1520 of the Bankruptcy Code.

The Court further finds that the Russian Court ruled that the remainder of the PPF Assignment, *i.e.* the transfer of claims by Poymanov to PPF, is both void and invalid and, in fact,

---

[10] The imposition of costs on the Foreign Representative is not dispositive of the issues before the Court.

11

that Poymanov's claims "could not have been transferred either to PPF Management or to any third parties." *Id.* p. 12. Thus, the SDNY Claims that are based on a purported transfer of ownership from Poymanov to PPF (the "Poymanov-based SDNY Claims") remain property of Poymanov.

PPF argues that although the Poymanov-based SDNY Claims may be said to constitute Poymanov's property, they do not constitute property of Poymanov's estate because the Russian Court declined to apply the consequences of invalidation and thereby return the claims to the estate. It does not automatically follow that because the Russian Court declined to apply the consequences of invalidation by returning claims to the estate, the Poymanov-based SDNY Claims, which Poymanov never effectively transferred, are not property of Poymanov's estate. Indeed, the Russian Court did not, in its ruling, determine that the Poymanov-based SDNY Claims are *not* property of the estate. Rather, as set forth in the Russian Court Assignment Ruling, pursuant to Article 213.25 of the Russian Bankruptcy Law:

> all property of an individual, including property rights of claim to third parties for the recovery of pecuniary damages and moral harm, available as at the date of the decision of the Arbitration court on declaring an individual bankrupt and commencement of the sale of individual's assets and identified or acquired after the date of the decision, ***composes the bankruptcy estate***.

*Id.* p. 10 (emphasis added). Thus, pursuant to Russian Bankruptcy Law, the Poymanov-based SDNY Claims - - to the extent they exist - - constituted property of Poymanov's bankruptcy estate before the purported transfer, and continue to constitute property of Poymanov's estate after and notwithstanding the invalid transfer. This determination is further supported by the following excerpts of the Appellate Court Assignment Decision:

- Meanwhile, as follows from Clause 5 of Article 213.25 of the Law on Bankruptcy, after the date of recognition of an individual as a bankrupt, all transactions committed by the individual personally (without involvement of the financial

12

> manager) in relation to its bankruptcy estate shall be null and void. *Appellate Court Assignment Decision* p. 8.
>
> - In accordance with Clause 1 of Article 167 of the Civil Code of the Russian Federation, an invalid transaction does not entail any legal consequences, except those associated with its invalidity, and is invalid from the time it was committed. *Id.* at p. 9.
>
> - In this case, the Court of First Instance lawfully did not apply restitution as a Consequence of invalidation of the transaction, since the rights to claim compensation for pecuniary and non-pecuniary damage in connection with unlawful actions with respect to the shares of Pavlovskgranit JSC and Pavlovskgranit-Invest CJSC had never existed, in which connection these rights could not be returned to PPF Management Company, nor could they be assigned to the said company. ***Besides, if these rights existed, they would have to be returned to the bankruptcy estate of the debtor Poimanov [sic] S.P. by way of restitution according to the decision to declare the transaction invalid (null and void).*** *Id.* at p. 9 (emphasis added).

**B. The Automatic Stay**

Bankruptcy Code section 1520 provides that "[u]pon recognition of a foreign proceeding that is a foreign main proceeding . . . sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a)(1). Thus, pursuant to section 1520(a)(1), upon entry of the Recognition Order, pursuant to which the Court recognized the Russian Insolvency Proceeding as a foreign main proceeding, section 362 became applicable to Poymanov and to the property of Poymanov that is within the territorial jurisdiction of the United States. As set forth above, the Russian Court Assignment Ruling and Appellate Court Assignment Decision make clear that, to the extent they exist, the Poymanov-based SDNY Claims are property of Poymanov's estate. Pursuant to section 362(a)(3), absent an applicable exception to the automatic stay, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" is subject to the automatic stay. 11 U.S.C. § 362(a)(3). Having found that

13

the Poymanov-based SDNY Claims are property of Poymanov's estate as a matter of Russian Bankruptcy Law, and PPF not having argued that any exemption from the automatic stay applies, the Court concludes that the Poymanov-based SDNY Claims fall within the protection of sections 362(a)(3) and 1520(a)(1) of the Bankruptcy Code.  Any act by PPF to pursue the Poymanov-based SDNY Claims in the SDNY Action, or otherwise, is therefore stayed pursuant to section 362(a)(3).

Finally, PPF's argument that, pursuant to section 362(c)(1), which provides that the automatic stay continues until property is no longer property of the estate, the automatic stay no longer applies to the Poymanov-based SDNY Claims due to the purported transfer (Opp. ¶ 14) is circular and without merit.  The Russian Court explicitly ruled that any purported transfer of the Poymanov-based SDNY Claims is invalid, has no legal consequences, and is void from the time of its execution.  Thus, because the claims were never transferred out of the estate, section 362(c)(1) is inapplicable.

## *CONCLUSION*

For the reasons set forth above, the Court concludes that SDNY Action is not subject to the automatic stay with respect to the SDNY Claims that are based on Podgornaya's ownership of shares in P-Granit and her purported transfer of claims to PPF.   However, pursuant to sections 362(a)(3) and 1520(a)(1) of the Bankruptcy Code, that portion of the SDNY Action that is based on the Poymanov-based SDNY Claims is subject to the automatic stay.

It is so ordered.

Dated: New York, New York
      December 27, 2017              *s/ Mary Kay Vyskocil*
                                        HONORABLE MAY KAY VYSKOCIL
                                        UNITED STATES BANKRUPTCY JUDGE